## In re NORTON.

(Supreme Court, Appellate Division, Second Department. October 28, 1898.)

ELECTIONS—CERTIFICATE OF NOMINATION—MANNER OF FILING.
  Election Law, § 58, providing that the certificate of nomination "shall be filed with the clerk," is satisfied by a delivery to the possession of the acting clerk at any time before midnight of the last day for filing, and wherever he may be. It need not be delivered at his office.

Appeal from special term, Kings county.

Mandamus by James Norton to compel the county clerk of Queens county to receive and file, as of October 14th, a certificate of nomination of the petitioner as a candidate for state senator. From an order of the special term denying the writ (53 N. Y. Supp. 924), the petitioner appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Henry A. Monfort, for appellant.
F. H. Van Vechten, for respondent.

HATCH, J. The moving papers show that the petitioner was duly nominated by a convention of the Democratic party, assembled for that purpose, as a candidate for state senator in the Second senatorial district of this state, to be voted for at the coming general election to be held on the 8th day of November then next ensuing. The county

of Queens constitutes said senatorial district. Section 58 of the general election law requires that a certificate of nomination for this office shall "be filed with the clerk of the county in which" the electors voted for such candidate. The certificate is required to be filed with the county clerk at least 25 days prior to the holding of the election. Election Law, § 59. The time in which petitioner's certificate could be lawfully filed was on the 14th day of October, 1898. Upon the night of this day, between the hours of 10 and 11, petitioner's certificate, certified·in all respects as required by·law, was presented to the acting clerk of Queens county, who refused to receive or file the same. This refusal has been sustained by the court below, upon the ground that, as the county clerk was required by law to file such certificate, he could only comply with such provision when at his office, where the law requires the clerk to keep his books and files, and to receive and file such papers.

The county law requires that county clerks, between the 31st day of September and the 1st day of April, shall keep their offices open for the transaction of public business, from 9 o'clock in the forenoon to 5 o'clock in the afternoon, except upon Sundays and holidays or half-holidays. It is argued, therefore, that, as this certificate was presented after the hour for closing his office, he could not lawfully receive and file the same, and therefore the attempt to file was inoperative. The statute does not make the act of keeping open the clerk's office after or before the hours mentioned therein unlawful. It simply fixes the hours in the day when it shall be open for the transaction of public business. What effect an official act of the clerk would have when done after the closing or before the opening hour, if done at his office, in all cases, it is not necessary to determine in this proceeding. It was held in Hathaway v. Howell, 54 N. Y. 97, relied upon to support the determination below, that leaving a judgment roll with the clerk after the closing of the office did not constitute the same a valid judgment as of the time of delivery, but that it became operative upon the following business morning, when the clerk opened the office. It is, however, to be observed that judgments are required to be docketed in books kept for that purpose, and cannot become effective until received at the clerk's office where such books are kept. In cases of this class, the docketing of judgments, recording of mortgages, and other similar acts, are required, not alone for the protection of the parties whose interest is to have them recorded or docketed, but it also affects or may affect the rights of third parties, as the act of record determines their status, and the necessary steps to insure a lien are required by positive law. As applied to this case, no such question can arise. The filing of this certificate in no wise affected the property interest of third parties, or in any wise affected their legal right in respect thereto. The purpose of the statute is to require the filing to evidence the action of the convention, and enable the clerk to make up and properly certify the ticket. The voters. have a special interest in having what was done properly evidenced, in order that they may not be deprived of the privilege of exercising the franchise in favor of a person representing their views, which their delegated authority has selected. There is therefore quite a

radical difference in reason between a law which creates an involuntary lien, and fixes the rights of third parties affected thereby, and one which seeks a method of procedure by which the nomination of candidates is evidenced, the elective franchise made secure, and the fullest scope permissible given to its exercise. As we have seen, the election law gave to the petitioner the whole day of the 14th of October in which to file his certificate. This contemplated a day of 24 hours. Such are the terms of the statutory construction law. Laws 1894, c. 447. It is quite apparent, therefore, that, if the petitioner must have filed the certificate before the clerk's office closed upon this last day, his right to a full day of 24 hours is abridged. There ought to be no abridgment of his clear legal right in this respect, unless it be worked by clear legal authority. The language of the statute is "shall be filed with the clerk." A compliance with the letter of the statute is had when the paper is placed in the possession of the clerk, wherever he may be. His office is not mentioned, although the office is mentioned in connection with the filing in Fulton and Hamilton counties. As to all other offices therein mentioned, the statute is satisfied upon filing with the respective officers. It is many times found necessary, in order to uphold a given act, where appeals in its favor are based either upon public or private good, to interpret a statute against its strict letter, and in accordance with its spirit, in order that justice may be accomplished. We have therefore little difficulty in reconciling an adoption of the letter of the statute when by so doing is enhanced the public good. In the present case it is for the interest of the voters in this senatorial district to have an opportunity to vote for the candidates who have been properly selected. Limitations upon the exercise of such right are not favored. The whole scheme of the election law, at bottom, is to secure to the voter the right to vote for the candidate of his choice, and to have the vote thus given honestly counted and returned. This right should not be restricted by the removal of candidates from a ticket, any more than in preventing the voter from depositing his ballot. Both are entitled to the same measure of protection; and, where the statute may be satisfied and both privileges secured by fair construction, it is the duty of the court to adopt such construction. In the present case, in order to secure to the petitioner his full legal right, and to give to the voters the opportunity to vote for the candidates of their choice, we think that, however technical may be the meaning which attaches to the word "file," it must be held to be satisfied when the certificate is left with the clerk, and that such act satisfied the requirements of the statute as to filing with him.

This view is confirmed by the customary practice of the secretary of state, and other persons and bodies required to receive certificates of this character, who keep their respective offices open until midnight of the last day for filing certificates, in order that all legal rights may be preserved. This practice is commendable. But, whether it be adopted or not, we think the statute is satisfied when the certificate is given to the clerk; and, as it is then within the legal right of the party so to deliver it, it must be regarded as a filing, within the meaning of this statute. The statute in question admits of different inter-

pretations, and no censure can attach to the clerk for interpreting the statute as he did. The order should be reversed, and the motion granted.

Order reversed, and application granted, without costs. All concur.