OSCAR J. BROWN, PROSECUTOR, v. CLARENCE CHRISTIAN AND EDMUND WATKINS, PARTNERS, TRADING AS CHRISTIAN & WATKINS, AND WALTER FIRTH, SHERIFF OF THE COUNTY OF MERCER, RESPONDENTS.

Submitted March 23, 1922—Decided May 6, 1922.

1. In trying the right of property taken by a sheriff by virtue of a writ of attachment, that officer may determine the admissibility of evidence, but has no power to direct a verdict but only to conduct the inquisition as prescribed by the statute; there is a statutory distinction between such a proceeding, and one where the taking by the sheriff is by virtue of an execution to enforce a judgment; in the latter proceeding the inquisition is to be tried by a judge of the Court of Common Pleas "as any other case of trial by jury."

2. The right to retake goods conditionally sold upon default in payment of an installment does not exist until the last day the payment is required has elapsed, for the conditional buyer has all of that day to make the payment, and an earlier seizure does not deprive the buyer of his right to the property during the last day payment may be made.

3. *Certiorari* is the proper remedy to review an inquisition relating to the right of property taken by a writ of attachment, which is claimed by some one other than the defendant. *Vide Obart* v. *Letson,* 17 *N. J. L.* 78.

On *certiorari.*

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *William F. Vosseller.*

For the respondents, *Maxwell A. Kraemer.*

The opinion of the court was delivered by

BERGEN, J. This writ was allowed to review the proceedings had before the sheriff of the county of Mercer and a jury upon a claim by the defendants that an auto, seized in attachment as the property of defendant in attachment, was the property of the claimants, and the verdict of the jury was in favor of the claimants, the defendants in *certiorari.* The basis of the claimants' right rested upon a written lease under which one Martin had been given possession by the claimants of the auto subject to the payment of the purchase price in installments as rentals. A considerable sum of money was paid on account of the purchase price, leaving due $1,550. The first installment was represented by a note payable in one month after date of the so-called lease, which was June 12th, 1920, on account of which $125 was paid, leaving the balance in arrears. There is no proof in the case showing when the attachment was levied or in whosse possession the auto was at that time, but the briefs admit that the attachment was levied the 19th of July, 1920, and that on that date, previous to the levy, the claimants had retaken the auto from Martin about ten o'clock in the forenoon, while the writ was executed at three o'clock. By a writing the claimants had extended to Martin the due date until the 19th of July, 1920. It is very clear that under the act entitled "An act concerning conditional sales and to make uniform the law relating thereto" (*Pamph. L.* 1919, *p.* 461), this writing is a condi-

tional bill of sale, because the act declares that any contract
for the lease of goods by which the lessee contracts to pay as
compensation a sum substantially equivalent to the value of
the goods, and by which the lessee has the option of becoming
the owner upon full compliance with the terms of the contract,
is a conditional sale. So, we have this situation, a conditional
bill of sale under which the lessee had possession of the prop-
erty, to have a complete title upon the payment of the entire
price in installments; that one of the installments matured
on the same day that the attachment was issued and levied,
and on this day the lessor retook the property. It is admitted
that the conditional bill of sale was never recorded.

The first question to be considered is whether the proceed-
ings to try the right of property under the Attachment act
can be reviewed by *certiorari*. This must be answered in the
affirmative. The proceedings are in statutory tribunal from
which no appeal has been provided by the statute, and unless
this court can review this proceeding, and the judgment
founded on the verdict, the parties to the litigation are with-
out redress. We have an old case where this court reviewed by
*certiorari* a similar proceeding and set aside the inquisition.
*Obart* v. *Letson*, 17 *N. J. L.* 78. The Attachment act is dif-
ferent from the act relating to trials to determine the owner-
ship of property seized under writs of execution. Under the
Attachment act (*Comp. Stat., p.* 139) if property attached
be claimed by any person as his property the officer making
the attachment may summon a jury and try the title thereto,
and if the jury shall find the title to be in claimant, or in any
other person than the defendant, the officer shall forthwith
deliver the property to the person in whom the title is found,
and section 13 provides that if a jury be summoned the officer
shall appoint the time and place of trial, and give notice to
the parties; he may adjourn the trial from time to time, and
issue subpœnas for witnesses, and administer the usual oath
to the jurors and witnesses, and keep the minutes of all the
proceedings and file the same with the verdict and inquisition
found by the jury, which must be signed by all of the jurors

and by the officer, in the office of the clerk of the court out of which the attachment issued. In the case of an execution the claimant must apply to one of the judges of the Court of Common Pleas of the county and the judge may issue a *venire* to summon a jury to try the question, and proceed therein "as in other cases of trial by jury." The distinction seems to be that under a trial in attachment proceedings the power of the officer is limited to the rejection of evidence according to *Obart* v. *Letson, supra*, although even that may now be doubted as the statute has been altered in form since that case was decided, and the words "admitted by him," upon which the court rested its decision in that case, have been eliminated from the statute. But, notwithstanding this alteration, we think the officer presiding at the trial must pass upon the question of the admissibility of the evidence, although he would have no power to direct a verdict, because he is not given the authority to exercise the general power of a trial court. *Comp. Stat., p.* 139, § 13. The proceedings under a claim of property where the writ is an execution is different in this respect, that it is to be tried before a judge of the Court of Common Pleas "as any other case of trial by jury." *Comp. Stat., p.* 2225, § 32. Therefore, there is nothing in the point raised by the defendants in their brief that the questions under review were not raised below, by a motion to direct a verdict, because they could not be, as a motion to direct would be futile, the officer having no such power.

There was an objection to the refusal of the sheriff to pass upon the admissibility of evidence, and that was erroneous, because incompetent and immaterial evidence might in such case go to the jury, and they, having no power to determine the question of admissibility, would be bound by it, and an unrighteous verdict might be rendered. On the other hand, as the court has no power to direct a verdict it would have been useless for the prosecutor in this case to have made a motion to that effect. We think we must treat this case as one

where we are to determine whether there was any evidence which sustains the result of the inquisition. Turning to that question we find that the right of the claimants rests upon an unrecorded conditional bill of sale. The fifth section of Conditional Sales act above referred to provides: "Every provision in a conditional sale reserving property in the seller shall be void as to any purchaser from, or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment, or levy a lien upon them before the contract or a copy thereof shall be filed as hereinafter provided, unless such copy or contract is so filed within ten days after the making of the conditional sale." It is admitted in this case that the conditional bill of sale was not filed as provided by the act at any time, and there is no proof whatever that the attachment creditor had any knowledge or notice of the provisions of the contract reserving property in the seller. It seems to us that under this statute conditional bills of sale are void as to an attaching creditor if not filed within ten days after they are made, unless the creditor has notice of its provisions.

And so when this attachment was levied it was void as to the attaching creditor unless he had notice, not that there was a conditional bill of sale, but of its provisions, and the mere fact that on the day the writ was issued the seller retook the goods was no notice that the sale was conditional, or of its provisions relating to retaking goods. If it were otherwise, then the very object of the act would be defeated, because very often credit is extended because the debtor has in his possession ample personal property to satisfy the credit if given, and to allow a party to withhold a bill of sale from record until the very day judgment is entered, or an attachment levied, and then seize or retake the goods, would destroy the very purpose of the act. We think that under this statute, although we do not have to go so far in this case, if a conditional bill of sale is not filed within ten days after it is made. it is absolutely void as to any attaching creditor, unless he has

notice of the bill of sale and of its provisions prior to the execution of the writ.

There is another point which is fatal to this inquisition, and that is that the claimant retook the goods during business hours of the last day which must elapse before a default was possible. The lessee had the entire 19th day of July, 1920, to make the payment, and the claimants had no right to assume a default and retake his goods as early as ten o'clock in the forenoon, because the defendant in attachment had the entire business day to make the payment, and it was his property when attached and not that of the lessor, there being then no legal default.

The inquisition will be set aside, with costs.