19 N.J. Super. 313 (1952)
88 A.2d 283
IN THE MATTER OF AN APPLICATION BY R. LEONARD BYRNE, CLERK OF THE CITY OF WILDWOOD FOR SUMMARY EXAMINATION OF CERTAIN OBJECTIONS TO THE NOMINATING PETITIONS OF GEORGE W. KROGMAN, DAVID C. INGERSOLL, DR. JOSEPH A. FUREY AND ROY S. PARSON.
Superior Court of New Jersey, Law Division.
Decided April 17, 1952.
*314 Mr. George M. James, for the writ.
Mr. W. Elmer Brown, contra.
WOODS, J.S.C.
The plaintiffs, George W. Krogman, David C. Ingersoll, Dr. Joseph A. Furey and Roy S. Parson aspire for the office of commissioner of the City of Wildwood. The election is scheduled for May 13, 1952. On April 3, 1952, *315 they attempted to file their nominating petitions with the municipal clerk, R. Leonard Byrne, agreeable to R.S. 40:75-3, which statute provides as follows:
"The names of the candidates for commissioners shall be filed with the municipal clerk in the manner and form and under the conditions set forth in this section and sections 40:75-4 and 40:75-5 of this Title; said filing to be at least twenty days prior to an election for the first members of the commission and at least forty days prior to any other municipal election. The petition of nomination shall consist of individual certificates equal in number to at least one-half of one per centum (1/2 of 1%) of the entire vote cast at the last preceding general election, but in no event less than twenty-five.
Each certificate shall be a separate paper and shall contain the name of but one signer and the name of but one candidate. No signer shall, at the time of filing the certificate, have signed more certificates for candidates for that office than there are places to be filled. If an elector has signed two or more conflicting certificates all such certificates shall be rejected."
The last day for filing, it is conceded, was April 3, 1952.
Plaintiffs allege that a proper petition in form and substance was executed. This the municipal clerk conceded at the hearing on the merits of this cause held on Thursday, April 10, 1952, at Cape May Court House. By the plaintiffs it is contended that between the hours of 4:00 P.M. and 12:00 midnight, April 3, 1952, efforts were made by the petitioners for nomination at Wildwood City Hall and elsewhere to file their nomination papers but with no avail; that when all reasonable efforts to contact the city clerk or his deputies failed, the nomination petitions were filed in manner following:
As to the petitions of Dr. Joseph A. Furey and David C. Ingersoll: These petitions were addressed to R. Leonard Byrne, City Clerk, and delivered to the Wildwood City Hall, being accepted by Sergeant Clifford Olson of the Wildwood Police Department, the said Olson being the officer on duty in the City Hall at this time; the petitions subsequently being locked in a rear room for safekeeping until approximately 11:00 P.M. at which approximate time they were returned to the agent who delivered them, at his own request, and were handed personally to Commissioner Clarence M. Malley, who had personally left his home and come to the City Hall for the purpose *316 of accepting nominating petitions in the absence of the clerk or his deputy; following which the said petitions were once more locked in the rear room for safekeeping.
As to the petition of Roy S. Parson: This petition was likewise addressed to the city clerk and left with the said Olson, and was likewise subsequently personally handed to the said Malley and was locked in the rear room for safekeeping.
As to the petition of George W. Krogman: This petition was likewise addressed to the city clerk and was personally handed to the said Malley in the city clerk's office at the city clerk's desk, following which this petition together with the other three petitions, was locked in the rear room for safekeeping.
These proceedings are the sequel to the city clerk's act pursuant to R.S. 40:75-44, which reads as follows:
"Whenever the municipal clerk shall believe any petition for recall, petition for nomination, incumbent's petition, or other petition, to be defective, he shall, before returning the petition as provided herein, present his objections in writing to the justice of the supreme court holding the circuit in which the municipality is located. The justice shall proceed summarily to examine the clerk's objections, and shall forthwith make an order sustaining or overruling any or all of the objections. Such order shall be final and binding on all parties concerned."
On the representation made by the city clerk, this court signed an order sustaining the objections made by him. At that time also, as now, the court pointed out that two salient features of the statute dealing with the filing of nomination petitions focus attention, to wit: (1) time, (2) place. The first deals with April 3 and the second with "the municipal clerk." We have used the words "city clerk" to mean the same person. The order signed was not predicated on failure in point of time, but on the place or with the person. Both points here, however, are raised again.
This is a proceeding in the nature of a prerogative writ for mandamus. At the hearing these facts, and others, were substantiated:
(a) The last day for filing petitions for nomination was April 3, 1952;
*317 (b) The office of the city clerk was regularly open for transaction of official business each week day (except Saturday) until 4:00 P.M.;
(c) The clerk's office was open for business all day April 3, 1952, until the regular closing hour;
(d) Plaintiffs did not attempt to file their nominating petitions until after 4:00 P.M. on April 3, 1952;
(e) Petitions of plaintiffs Furey and Ingersoll were left with Sergeant Clifford Olson of the police department, then on duty at City Hall (not at city clerk's office) at about 7:15 P.M. on April 3, 1952;
(f) Petition of plaintiff, Parson, was left with Sergeant Olson at about 10:20 P.M. on that day;
(g) Petition of plaintiff, Krogman, was handed to Clarence M. Malley, a member of the city commission, at City Hall at 10:30 P.M. of that day;
(h) Neither of plaintiffs' petitions was given to the city clerk on that day; and
(i) None of the persons to whom said petitions were given on said April 3, 1952, were members of the city clerk's staff of office employees.
(j) All petitions in fact eventually reposed in the hands of Commissioner Malley who volunteered to receive them at the municipal clerk's desk before midnight, April 3.
(k) Nomination petitions came into the possession of the municipal clerk at 9:25 A.M., or thereabouts, on April 4.
Nineteen persons, exclusive of counsel for plaintiffs, testified; of these were three of the aspirants to nomination. We shall not review in detail their testimony, but the force of this testimony reveals that on April 3, 1952, the municipal clerk left his office about 4:10 P.M.; that his assistant or deputy clerks left about 4:00 P.M. and the clerk's quarters were closed for the remainder of the day. It also developed that the clerk or his office had reason to believe that at least two persons contemplated filing for the office of commissioner (Krogman and Parson); that such intentions were communicated to the clerk before 4:00 P.M. Anyhow, the municipal *318 clerk fixed the deadline time as four o'clock and the plaintiffs (petitioners) midnight. From three o'clock in the afternoon until an hour before midnight, April 3, electors of Wildwood bestirred themselves to have their names, or to place in their behalf names, on the ballot for nominations. Of this activity the municipal clerk must have been cognizant and certain before he quit his office on that day. Telephone conversations, talks in the City Hall and elsewhere, convince us to this purport. The clerk, at any rate, left to attend a directors' meeting at his bank; one of his deputies (Amanda McVey) phoned her home that she didn't expect to return for dinner. These, as well as the assistant deputy clerk, left no word as to their whereabouts for the remaining hours of April 3. Although counsel for the municipal clerk insists that the "activities of both the clerk and his deputy on that day were normal and not unusual," we cannot conclude from all the surrounding circumstances, the importance of a municipal election in the offing, past experiences, newspaper publications and talk on the street, that he should dismiss his duty in a perfunctory way. The court concedes there were business hours, but sometimes duties must be performed at night, and one of these is standing by to accept petitions for nominations on the last or dead-line day for filing petitions for nominations.
Counsel for the municipal clerk raises three questions:
1. Does the statutory requirement that petitions "shall be filed with the municipal clerk" contemplate filing with the clerk at his official office during usual business hours?
2. If not, may such petitions be handed to the city clerk after usual business hours on the last day for filing, wherever he may be found, so as to thus constitute a legal "filing with the clerk"?
3. Assuming that filing may be accomplished after 4 P.M. of the last day, does the handing of petitions to an employe or officer of the municipality, other than the city clerk or a member of his official staff, constitute "filing with the clerk"?
As in election matters generally we can find rules of action on both sides argued. We shall take up the municipal clerk's side of the question first. We quite agree with the *319 attorneys on both sides of this question that but little law may be found in New Jersey. We have resort, however, to decisions in other states, to local custom and the general attitude in determining questions affecting franchise and procedure in elections. In the matter of commissioners the statute law, R.S. 40:75-16 reads as follows:
"No informalities in conducting a municipal election shall invalidate the same if conducted fairly and in substantial conformity with the requirements of law."
To sustain the municipal clerk, his objections made and order entered thereon, he cites R.S. 40:75-3, emphasizing "filed with the municipal clerk," and calls the similarity of the expression "shall be filed with the clerk" quoted in an Illinois case entitled Daniels v. Gavner, 404 Ill. 372, 88 N.E.2d 823 (Sup. Ct. of Ill. 1949), reporting a proceeding in the nature of a mandamus to compel the city clerk to include certain names on the official ballot as candidates for various city offices. The question raised was whether petitions for nomination were properly presented to the clerk at his residence on the last day of filing after the closing of his official office on the last day of filing. Parenthetically, we may advert to the court's remark there that the court had never, up to that time, been called upon to rule on these points, and it, too, looked to foreign jurisdictions for light. Here the court said in part:
"To allow the clerk to accept nomination papers at any other time would be contrary to our election statute and give arbitrary power to the clerk not intended. The purpose of such a rule is obvious, for it is not only the clerk who is interested in the proper and timely filing of nomination petitions, but other candidates for office and citizens and voters in general have a vital interest in the question of a waiver or extension of time for the filing of nomination papers. Papers of such nature should be contained in the files and records of the clerk, subject at all times to the inspection of the whole public, both for their information and for their examination to see if objections may lie to their sufficiency. To allow filing at whatever place the clerk might be found would defeat such objects, and * * * the practice of indiscriminate filing could only lead to confusion and possible fraud."
*320 This case alluded to, reached out into precedents set by other commonwealths. Among these citations is Cowie v. Means, 39 Colo. 1, 88 Pac. 485 (Sup. Ct. 1907), where persons with nominating petitions caught up with the secretary of state at the Denver depot on Saturday evening at 7:00 o'clock. This was the last day for filing and there handed him the petitions. The petitioners argued the filing good; the court held otherwise, stating that the filing of the certificates was to give notice to the public, which notice could not be given by placing them in the pocket of a state officer wherever he might be found, and asserted that to permit this would lend to unutterable confusion and open the door to fraud and corruption. The court held that "to constitute legal filing, which would enable the candidates to have their names placed on the ballot, the certificates should have been filed at the office of the Secretary of State with some person in charge, during business hours, and at a time not less than the number of statutory days before the election."
In Cosgriff v. Board of Election Commissioners, 151 Cal. 407, 91 Pac. 98 (Sup. Ct. 1907), we have this summary:
"The petition is in two counts. The first count presents the single question whether or not the offer of the certificate after 5 o'clock in the afternoon of October 16 (the last day for filing) was a lawful offer with respect to the time of the day at which it was made. * * * While we do not hold that the registrar would be required to keep his office open for such business after the hours prescribed by law, yet we have no doubt that, in cases like this, where the political rights of citizens are involved, if he does keep his office open after those hours, it is his duty to receive and file such a document though presented after the lawful hours."
Another case cited in sustaining the municipal clerk's position is that of Johnson v. Holm, 198 Minn. 192, 269 N.W. 405 (Sup. Ct. 1936). Here there was an attempt to file a petition to place a name on the ballot for the office of governor of Minnesota. The office of the secretary of state was closed on Saturday afternoon, Saturday being the last day for filing. An unsuccessful attempt was made at 4:00 P.M. on that date to file the petition at the office which was *321 found to be closed. At midnight two persons took up vigil at the closed door and remained there until opening time on Monday morning, at which time the petition was refused on the ground that the time had then expired. The Minnesota Supreme Court held that the fact that the office was not kept open after the usual hour of closing could not be the basis for relief, since the customary hours of the office were well known.
To the same purport are State ex rel. Earley v. Batchelor, 15 Wash 2d 149, 130 Pac.2d 72 (Sup. Ct. 1942), and Brelsford v. Community High School Dist. No. 36, 328 Ill. 27, 159 N.E. 237, 239 (Sup. Ct. 1927). These, too, deal with office closing hours.
A general resume of the cases reported deal with the mandatory and directory features of the election laws, and that statutory provisions in election statutes requiring that a certificate or application of nomination be filed with the specified officer within a stipulated period of time, are mandatory.
There are precedents to the contrary, and to neighboring states our courts look for enlightenment. "In construing statute by reference to conflicting precedents from other jurisdictions, court should follow the line of decisions supported by the better reason and best reflecting legislative intent." Wood v. Cowan, 68 Utah 388, 250 P. 979 (Sup. Ct. 1926).
From those jurisdictions which take a more liberal view, we cite the following cases:
In re Norton, 25 Misc. 48, 53 N.Y.S. 924 (Sup. Ct. 1898): Here the application of James Norton was made for a peremptory writ of mandamus to compel the county clerk of Queens County to receive and file as of October 14, 1898, the certificate of nomination of petitioner as a candidate for Senator. The application was denied, the court holding that by section 59 of the election law the last day for filing the certificate was October 14. Section 58 provides that "it shall be filed with the clerk of such county." Petitioner *322 offered it to a deputy county clerk at his residence at about 11:00 P.M. on October 14, but he declined to receive it on the ground that the office of the county clerk was closed and that he could not receive it at his house. The statute provided that the prescribed hours for the county clerk's office to be open were from 8:00 A.M. to 5:00 P.M. This case then went to the Appellate Division of the Supreme Court on October 28, 1898 (See 34 App. Div. 79, 53 N.Y.S. 1093) and here it was held that the election law gave to the parties the whole day of the 14th of October in which to file certificates; that the statute contemplated a day of 24 hours.
"Such are the terms of the statutory construction law. * * * It is quite apparent, therefore, that if the petitioner must have filed the certificate before the clerk's office closed upon this last day, his right to a full day of 24 hours is abridged. There ought to be no abridgment of his clear legal right in this respect, unless it be worked by clear legal authority. The language of the statute is `shall be filed with the clerk.' A compliance with the letter of the statute is had when the paper is placed in the possession of the clerk, wherever he may be. His office is not mentioned. * * * It is many times found necessary, in order to uphold a given act, where appeals in its favor are based either upon public or private good, to interpret a statute against its strict letter, and in accordance with its spirit, in order that justice may be accomplished. * * * Limitations upon the exercise of such rights are not favored. The whole scheme of election law, at bottom, is to secure to the voter the right to vote for the candidate of his choice, and to have the vote thus given honestly counted and returned. This right should not be restricted by the removal of candidates from a ticket, any more than in preventing the voter from depositing his ballot. Both are entitled to the same measure of protection; and, where the statute may be satisfied and both privileges secured by fair construction, it is the duty of the court to adopt such construction. In the present case, in order to secure to the petitioner his full legal right, and to give to the voters the opportunity to vote for the candidates of their choice, we think that, however technical may be the meaning which attaches to the word `file,' it must be held to be satisfied when the certificate is left with the clerk, and that such act satisfied the requirements of the statute as to filing with him."
In re Darling, 189 N.Y. 570, 82 N.E. 438 (Ct. Apps. 1907): Here an application was made to review the proceedings for filing a certificate of nomination and the court said:
*323 "Though we regard the statutory requirement as to the time when certificates of nomination should be filed as mandatory, * * * there may occur accidents and mistakes, causing delay in such filing, from the effect of which the Supreme Court * * * may [grant relief], provided it finds that the delay has not been due to the negligence or fault of the convention making the nomination, or of the party to whom the filing of the certificate was intrusted. But the question in each case whether there has been excusable default or misfortune depends upon the particular facts."
Cross v. Cohen, 183 Misc. 611, 50 N.Y.S.2d 42 (Sup. Ct. 1944): In this case an attempt was made to file the certificate of nomination on July 3 at 8:00 P.M. (the last day for filing) with the board of elections, but that office was closed. The court held:
"The inability to file the certificate on that day was due to no fault of the American Labor Party which had until midnight of July 3rd in which to file the certificate (Matter of Norton, 34 App. Div. 79, 53 N.Y.S. 1093); thus was done all that could be done to accomplish filing. * * * The said certificate [is] valid and properly filed."
Moore v. Bachman, 73 N.Y.S.2d 62 (Sup. Ct. 1947): In this case the petitioners invoke the aid of the court under its discretionary powers on an order to show cause as to why the respondents, Commissioners of Elections of Onondaga County, should not accept and file a certificate of nomination of town officers of the Republican Party of the Town of Pompey. Section 140, subdivision 11 of the Election Law as amended in 1945 and 1947 required that all papers required to be filed pursuant to the provisions of the chapter, shall be filed between the hours of 9:00 A.M. and 5:00 P.M., and that all papers sent by mail in an envelope postmarked prior to midnight of the last day of filing shall be accepted for filing when received. The petitioners were named at a Republican caucus held in the Town of Pompey as candidates for town offices.
"The testimony discloses that approximately two hundred persons attended the caucus called for 2 P.M. on August 11, at Pompey Center. *324 * * * The work of the caucus was over at 3 P.M. eastern standard time, the town not having taken proceedings to adopt daylight-saving time. Certificates of nominations were executed in duplicate, one being filed with the Town Clerk. Walter S. Moore * * * took the other duplicate original for the purpose of filing with the Commissioners of Election at their office located in the County Court House in Syracuse. Mr. Moore testified that he phoned the Court House exchange at 3:10 P.M. eastern standard time, 4:10 daylight-saving time, and reached the exchange operator in the Court House at Syracuse; that he asked for the office of the Commissioners of Election, could hear the operator ring some extension, and was informed by the operator that she could get no answer from the office of the Commissioners of Election. Mr. Moore takes the position that having received word that no one answered from the Commissioners office at 4:10 P.M. daylight-saving time, he assumed the office was closed, * * * However, Mr. Moore states he started for Syracuse with the certificate, and between 6 and 7 o'clock, daylight-saving time, tried both the front and the rear doors of the Court House. Finding both locked, he states that he endeavored to reach Mr. Traister, Chairman of the Board of Supervisors, and a deputy sheriff. Not succeeding, he tried to reach Mr. Bachman, one of the Commissioners, by phone, but could find no phone listed under the name of Charles Bachman, in belief that such was the Christian name of Mr. Bachman. Accordingly, Mr. Moore gave up and returned with the certificate to the Court House shortly after 9 A.M., on the morning of August 12th, when the certificate was rejected."
The court held:
"Without question, it was the duty of the Commissioners to reject the certificate on the morning of August 12th, inasmuch as it was brought in personally and did not, as required by statute, bear a postmark prior to midnight of August 11, the last day for filing. However, the Legislature, when it enacted section 330, Election Law, conferred wide summary powers upon the Supreme Court to exercise its discretion and to `make such order as justice may require.' * * * Here was an honest effort made to timely file a certificate that contained the names of candidates for all of the town offices to be filled at the coming election. * * * If the court refused to grant relief, it would mean that to fill these offices it would be necessary to write in the names on election day with resulting chaos. * * * The instant decision does not mean that there is afforded an open sesame for officers charged with a duty to file certificates to neglect their duties and then call upon the courts for relief. Merit must be shown. In this instance, an order may enter directing the Commissioners of Election, respondents, to receive and file the aforementioned Certificate in this instance as of August 11, 1947."
*325 State ex rel. Jones v. Board of Deputy State Supervisors and Inspectors of Election of Montgomery County, 93 Ohio St. 14, 112 N.E. 136 (Sup. Ct. 1915): Here the relator procured a nominating petition in the form required by law and then sought to present it to the Board of Deputy State Supervisors and Inspectors of Elections of Montgomery County for the purpose of having the same filed shortly after 5:00 P.M., and again later in the evening of September 2, 1915, but was unable to do so because the office of the board was closed and remained closed until the next day. On that day, September 3, 1915, relator presented his nominating petition and requested it be filed and the board refused to receive and file it because the last day for filing was September 2. Relator contends that if September 2 was the last day upon which the nominating petition could be filed, he was entitled to have until midnight of that day to present his petition, and that it was the duty of the board to have its office open and accessible so that petitions for nomination might be presented and filed up to midnight of that day. The court said:
"Having reference to the contention first made, we find no statutory provision fixing or in any manner regulating the office hours of the Board of Deputy State Supervisors and inspectors of elections, nor any express requirements in that regard, but under the express provisions of the statute * * * candidates are entitled to all of the period up to `not less than sixty days previous to the day of election' during which to present nominating petitions, and whichever day is the last day upon which such petitions may legally be presented for filing, candidates are undoubtedly entitled to all of it. No rules or regulations of the board of deputy state supervisors and inspectors of elections, etc., as to office hours should be permitted to deprive candidates of rights which they have under the law. A well-established rule of construction requires that this statute shall be so construed as to avoid a penalty, or forfeiture, or deprivation of any right conferred by law. * * * `The word "day" [as used in laws providing that nomination papers of candidates shall be filed not less than a certain number of days previous to the "day" of election] refers to a day as a unit of time, and not as an aggregation of a certain number of hours, minutes, or seconds. In this sense, and for the purpose thus used, a day is not capable of subdivision into hours, minutes or seconds, but is to be taken as a whole. In such computations the hours *326 are not counted to ascertain whether a period of 24 hours, or a given number of such periods, have elapsed between the act to be done and the day from which the time is to begin running. The fractions of the days are no more taken into consideration than are the fractions of the seconds. The consequence is that every day, and every part of that day is, by this rule, one day before every part of the succeeding day. The last moment of any day is, in contemplation of law in such cases, one day before the first moment of the next day, although the elapsed time is infinitesimal. The rule is strictly one of convenience. Any other method of computation would require an accurate account to be kept of the exact hour, minute, and second of the occurrence of the act to be timed, would produce endless confusion and strife, and would prove impolitic, if not wholly impracticable.' * * * Under the provisions of Sec. 5004, General Code, the period for filing nominating petitions does not expire until the end of the sixtieth day previous to the day of election."
Consonant with practice and custom at least as old as nominating by petition (peculiarly incident to commission government), we incline all the more to the law as laid down by our neighbor states both in judicial interpretation and in clarifying legislative enactment. The exception tests the rule. The spirit, not the letter of the law, directs our understanding in issues of this kind. Here the spirit of the law and the New Jersey statute are congruent.
The court, too, takes notice that county clerks in New Jersey generally receive nominating petitions up to midnight of the last day fixed for filing. To this fact the County Clerk of Cape May County testified in verification. Also, the court has learned that this practice obtains in municipalities. Until the Legislature sees fit to specifically enact that a certain hour of the last day for filing or that the office hour fixed by the office holder or local municipal authority shall be unequivocally the time when the petitioners must file with the clerk, the court cannot construe a day, the last day for filing, any period of time other than a period from midnight to midnight of that day.
In this respect, too, we do not encourage filing where the municipal clerk or filing authority can be found, but we do foster a courtesy which a public servant should discharge in the dispatch of his duty. On such day, the municipal *327 clerk or his deputy should be available at his office until the stroke of 12.
The court having found that these petitioners had time to file their nominations up to midnight of April 3 and that they made a reasonable and diligent effort to comply with the statute to file their papers with the municipal clerk pursuant thereto, the order entered on the objection made by R. Leonard Byrne will be vacated and the said R. Leonard Byrne is hereby ordered to receive and file the petitioners' documents as of April 3, 1952, and on notice forthwith to permit them to draw for position on the ballot for the coming municipal election to be held in the City of Wildwood on May 13, 1952.