69 N.J. Super. 290 (1961)
174 A.2d 233
ELM LAND CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
JOHN E. GLASSER AND ROBERT BOYCE REALTY COMPANY, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1961.
Decided October 16, 1961.
Before Judges GOLDMANN, FOLEY and LEWIS.
*291 Mrs. Sylvia B. Pressler argued the cause for appellant (Mr. David A. Pressler, attorney; Mrs. Pressler, on the brief).
Mr. Harold R. Sandford argued the cause for respondents (Mr. Charles C. Carroll, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff appeals from a judgment dismissing an order to show cause why defendant should not be compelled to convey certain lands to it pursuant to a judgment previously entered by consent of the parties. Although the rights of the parties were established by that consent judgment, it is necessary to set out at least the more significant details of the five-year history of dealings between them.
In June 1956 defendant realty company agreed to sell plaintiff some 20 acres of land in Wayne Township fronting on State Highway No. 46, for $250,000. This was to be paid as follows: $20,000 deposit, to be paid by plaintiff's assignment to defendant of two mortgages of $25,000 and $5,000, respectively, owned by it; $30,000 cash at the closing, and $200,000 represented by a five-year purchase money bond and mortgage. The excess of $10,000 between the required deposit and the value of the mortgages was to be applied to the first quarterly payment due after the $25,000 mortgage was paid. The closing was set for October 1, 1956, between the hours of 10 A.M. and 4 P.M., at the office of defendant Glasser, the realty company's counsel.
This action was begun in the Superior Court, Law Division, on September 24, 1958. In its complaint seeking damages plaintiff alleged that in searching title it had discovered that a strip of land abutting the highway and running the entire width of the tract did not belong to defendant realty company, but to the State Highway Department; that plaintiff, through its president, Eberhard Meyer, had attempted to negotiate with Glasser for an abatement of the purchase price; and further, that defendant had not *292 yet obtained the necessary consent to the sale by the Wayne Township Planning Board. The litigation was undoubtedly the result of a breakdown in the negotiations for an abatement, in the course of which the settlement date was, by letter sent to plaintiff by defendants' present attorney, Mr. Sandford, fixed for October 1, 1958 at 2 P.M., at his office, time being made of the essence.
Defendants counterclaimed, demanding specific performance of the agreement. Plaintiff's answer thereto alleged that it had always been ready, able and willing to perform, provided there was a reasonable abatement of the purchase price, and demanded specific performance with such an abatement. The pretrial order of February 27, 1959 summarizes these allegations.
Defendants claim that thereafter, on February 2, 1960, a stipulation of settlement was entered of record containing substantially the same terms as were later stipulated by the parties in open court on October 31, 1960. Although the mentioned pretrial order is stamped "settled," no order or stipulation dismissing the action, or settlement agreement, appears to have been filed and made of record. Plaintiff claims that the settlement agreement failed because it had not consented to its terms. Defendants moved to reopen the case for the purpose of having the settlement agreement enforced. The action was then transferred to the Chancery Division and pretried again in October 1960.
Immediately after this pretrial the parties entered into a settlement agreement which was dictated in open court on October 31, 1960, and entered on the record in the form of a consent judgment dated November 9, 1960. The complaint was dismissed with prejudice and judgment entered in defendants' favor, directing plaintiff to perform specifically the June 1956 contract, subject to certain modifications which included a $2,500 reduction in the purchase price. The only modification involved in this appeal provided:
"1. The closing date is fixed as March 1, 1961, which date is made of the essence."
*293 On February 20, 1961 Mr. Sandford wrote plaintiff, attention of Mr. Meyer, stating he would be ready to deliver the deed at his office on March 1, 1961, at 10 A.M., but "if this hour is not convenient for you, please call me and I shall arrange an hour which will meet with our mutual agreement." On February 28 Mr. Francis Rieger, associated with Mr. Guy Calissi who then represented plaintiff, went to the office of Mr. Sandford to inspect the closing papers he had prepared. According to Mr. Sandford, Rieger arranged for the closing to take place at 10 A.M. the next day, March 1. Later during the afternoon of February 28, he says, Mr. Rieger requested that the closing be postponed until 3 P.M. on March 1, to which he consented.
Mr. Sandford further says that on March 1, 1961 he was present in his office with his client, continuously from 3 until 5:35 P.M., ready to convey title. Mr. Rieger telephoned at about 3 P.M., requesting that the closing be postponed until 5 P.M. Mr. Sandford consented. At 5 P.M. Mr. Rieger telephoned again, advising that Mr. Calissi was on his way to his office from the Court House and requesting Mr. Sandford to await his call. Mr. Sandford agreed to wait, but not having received the call by 5:35 P.M., he left his office for the day.
In the affidavit filed on the return of the order to show cause about to be mentioned, Mr. Sandford states that Mr. Calissi called him at his home at 5:50 P.M.; "he told me that he intended to advance the necessary moneys to his client and that they would be ready to close the transaction on the following day, namely, March 2, 1961. I advised him that I felt that this would not meet with my clients' approval." The affidavit goes on to state that about 6:10 P.M. Mr. Calissi again telephoned and advised that he had spoken to the Chancery Division judge who had recommended that title be conveyed to plaintiff on March 2, 1961. Whether or not this be so, the fact is that immediately after Mr. Calissi's telephone call at 5:50 P.M. he submitted to the judge, and had signed, an order to show cause why *294 defendants should not be compelled to convey title to plaintiff. The order was accompanied by the affidavit of Mr. Meyer, plaintiff's president and controlling stockholder, stating that at 5:50 P.M. on March 1 he was ready, able and willing to close title pursuant to the consent judgment of November 9, 1960.
The return day of the order to show cause was March 10, 1961. Mr. Calissi appeared for the plaintiff and Mr. A. Leon Kohlreiter for defendants. Mr. Sandford was not present. The court had before it the affidavits of Mr. Meyer, Mr. Sandford (setting out the allegations already mentioned), and defendant Glasser (containing the recitation of the events since 1956). At the hearing Mr. Calissi insisted that Mr. Sandford's version of his 5:50 P.M. telephone call of the day before was not accurate. When he requested permission to take the stand so that he might testify to what had actually happened, the judge directed him to go on with his argument. Mr. Calissi then said:
"I offered to close title on that day, and there is no time in the judgment saying that it should be closed at 4, 5 or 6 o'clock. I was ready to close title on that day. When Mr. Sandford said that his clients would not close, then I offered to close it the next day, and he again said he did not believe his client [sic]; in fact, he said his clients refused to close."
He explained that he had been with the grand jury that afternoon (Mr. Calissi is the Prosecutor of Bergen County), and had been ready "not at 5 o'clock, but when I arrived at the office, to close this particular title." For the court not to order title closed would, he argued, result in a forfeiture of the $30,000 in mortgage equities given as a down payment. Mr. Kohlreiter then reviewed the events of the past five years and charged plaintiff with unjustified delay. After examining the consent judgment the trial judge said:
"* * * when I see the judgment in this cause entered here which specifically makes time of the essence, it changes the situation completely."
*295 The judgment dismissing the order to show cause followed.
Lacking any further explanation than the trial judge's single remark just quoted, we find it impossible to determine whether he denied relief because he considered the offer to close made at 5:50 P.M. on March 1 as coming too late and not in compliance with the consent judgment, or because plaintiff's offer had been to close on March 2.
We are entirely satisfied that plaintiff was ready, able and willing to close at 5:50 P.M. on March 1, with Mr. Calissi supplying the funds. Although Mr. Sandford's affidavit, from which we have quoted, states that when Mr. Calissi called at 5:50 P.M. he represented that his client would be ready to close the following day, March 2, his answers to questions put at the oral argument of this appeal show that the affidavit did not tell the whole story. Pressed to state exactly what had happened when Mr. Calissi called at 5:50 P.M., Mr. Sandford stated that Mr. Calissi had said he would close on March 2, and when Mr. Sandford told him he did not think his clients would agree, Mr. Calissi stated he would "close now." In order to make sure that Mr. Sandford had not misspoken himself, we again inquired whether Mr. Calissi had indeed said he would "close now"  i.e., at 5:50 P.M. on March 1. Mr. Sandford stated that this was correct.
We must take Mr. Sandford's statement exactly at face value. He was a principal participant in the 5:50 P.M. telephone conversation and represented defendants' interests. His statement resolves any conflict which might have existed between Mr. Calissi's version of the telephone call and his own. We now have an admission, made in open court, that Mr. Calissi offered to close at 5:50 P.M. and would supply the money necessary at closing from his own funds.
The only question that remains is whether the offer to close at 5:50 P.M. was reasonable, and as to this we have no doubt. The closing papers had been completed, inspected and approved the day before. All that remained to be done was to *296 pay over the cash due at the closing and to have the necessary papers signed.
Although we have recited some of the details making up the background of this case, the single determinative factor is the consent judgment entered on November 9, 1960, after the stipulation settlement had been dictated into the record in open court on October 31 preceding. However much defendants complain of the delay in closing title  a delay which plaintiff claims was bona fide because of its meritorious objections to the discrepancy between the amount of land which defendant realty company represented it owned and that which it actually owned  the parties finally and firmly resolved their differences in the November 9, 1960 consent judgment. That judgment fixed March 1, 1961 as the closing date, which date was made of the essence. It did not fix a specific hour or hours for the closing.
Defendants may not go back to the original contract of June 1956, which fixed October 1, 1956, between the hours of 10 A.M. and 4 P.M. at the office of Mr. Glasser, as the time and place of closing, in order to gain support for any contention that title should have been closed before 4 P.M. on March 1, 1961. The consent judgment directed specific performance of the June 1956 contract expressly subject to the modification that the closing was to be on March 1, 1961. That the hour for closing on that day was a flexible one is made clear by Mr. Sandford's letter to Mr. Meyer on February 20, 1961, fixing 10 A.M. on March 1, 1961 for the closing, but if that was not convenient, an hour could be arranged "which will meet with our mutual agreement." We then have the communications between Mr. Sandford and Mr. Rieger on February 28 and March 1, 1961, already detailed. It is apparent from these telephone communications that defendants did not initially intend, nor did plaintiff understand, that if the closing did not take place at any particular hour on March 1, defendants could declare plaintiff in default and thus unilaterally terminate the contract.
*297 Plaintiff argues that since it had the entire day of March 1, 1961 in which to perform, its offer to perform at 5:50 P.M. was timely both as a matter of law and of common sense. It points to decisions of our courts in other situations which establish the principle that a day encompasses the full 24 hours between successive midnights: In re Byrne, 19 N.J. Super. 313 (Law Div. 1952) (filing of election petition after the clerk's office closed at 4 P.M.); Levy v. Massachusetts Accident Co., 124 N.J. Eq. 420 (Ch. 1938), affirmed 127 N.J. Eq. 49 (E. & A. 1940) (payment of insurance premium placed in defendant's post office box after close of its office hours); Plainfield Motor Co. v. Salamon, 13 N.J. Misc. 570, 180 A. 428 (D. Ct. 1935) (not officially reported); and Brown v. Christian, 97 N.J.L. 56 (Sup. Ct. 1922) (buyer has until midnight of the tenth day in which to redeem under the Conditional Sales Act, R.S. 46:32-1 et seq.).
We hold that plaintiff, at the very least, had until a reasonable hour on March 1, 1961 in which to perform. Its offer to perform shortly before 6 P.M. was reasonable and timely, particularly when one recalls that Mr. Sandford and his client were willing to wait until 5 o'clock and even after that hour, until Mr. Calissi called. They waited until 5:35 P.M. and then left. The offer to close, communicated by Mr. Calissi to Mr. Sandford at 5:50 P.M., 15 minutes later, did not come too late. Not only does common sense dictate this conclusion, but a consideration of the equities of the entire situation indicates irresistibly that plaintiff must be relieved from the consequences of the forfeiture visited upon it by the trial court. In Labash v. Mancini, 14 N.J. Super. 116 (Ch. Div. 1951), factually distinguishable from the present case in that there a particular hour had been designated for closing, the same trial judge granted specific performance to a purchaser who was half an hour late, holding that:
"* * * it is the aim of a court of equity, wherever possible, to relieve a purchaser from the forfeiture of his right to purchase property as a result of his failure to comply strictly with the terms *298 of the contract. If the failure to apply is not deliberate or flagrant and there are no overriding equities, a court of equity will grant relief." (14 N.J. Super., at pages 120-121)
In the light of the consent judgment of November 9, 1960 and the conduct of the parties thereafter, we find nothing "deliberate or flagrant" in what plaintiff did. Indeed, defendants do not charge plaintiff with fraud or bad faith; they concede there was none. Nor do we find any "overriding equities." It should have been perfectly plain to defendants that plaintiff had not abandoned the contract or its intention to perform. The offer to close, made at 5:50 P.M., was reasonable in the light of all the circumstances, and it was arbitrary for defendants to have refused to go through with the closing when Mr. Calissi finally succeeded in reaching Mr. Sandford.
The judgment is reversed and the matter remanded to the Chancery Division for the entry of a judgment granting specific performance on condition that plaintiff post $30,000 with defendants' attorney within five days from the date of that judgment, all necessary adjustments to be made at the closing which shall be held within 30 days of the judgment.