Jeff R. HUSEBYE, as Chairman of the Sponsoring Committee to Refer SB 2202 Passed by the Fifty–Fourth Legislative Assembly, Petitioner,

v.

Alvin A. JAEGER, Secretary of State, Respondent.

Civ. No. 950227.

Supreme Court of North Dakota.

July 27, 1995.

Kathryn L. Dietz (argued), and Stephen D. Little (appearance), Dietz & Little, Bismarck, for petitioner.

Joann C. Toth (argued), Asst. Atty. Gen., and Laurie J. Loveland (appearance), Sol. Gen., Bismarck, for respondent.

VANDE WALLE, Chief Justice.

Jeff Husebye filed an application for an order to show cause requesting that this court exercise its original jurisdiction and direct Alvin Jaeger, the Secretary of State, to accept petitions seeking to refer a legislative enactment. Jaeger responds that he is statutorily precluded from accepting petitions submitted after 5 p.m. on the last day for submitting such petitions. We conclude that the statute relied upon by Jaeger is unconstitutional and that the State Constitution requires the Secretary of State to accept referral petitions until midnight of the 90th day after the date the referred measure was filed with the Secretary of State. We grant the application for the order to show cause and direct Jaeger to accept the disputed petitions.

The 1995 Legislature passed Senate Bill 2202, which amended certain provisions of the workers compensation law. The bill was filed in the Secretary of State's office at 4:48 p.m. on April 6, 1995. Husebye, as chair of a sponsoring committee seeking to refer Senate Bill 2202, delivered a proposed referendum petition to the Secretary of State's office on April 12, 1995. Because Art. III, § 5, N.D. Const., requires that a referendum petition be submitted within 90 days after the measure is filed, Jaeger advised Husebye

that the signed petitions would be due by July 5, 1995.

On July 5, 1995, Husebye arrived at the Secretary of State's office shortly before 5 p.m. and submitted 344 petitions. The parties dispute whether Husebye advised Jaeger that additional petitions were on the way, and whether Jaeger told Husebye that no petitions would be accepted after 5 p.m. It is undisputed, however, that Jaeger closed the outer office door at 5 p.m. Husebye asserts that, because Jaeger had advised him that no additional petitions would be accepted, he did not contact others who were waiting for his phone call and directions to deliver the additional petitions.

After leaving the Secretary of State's office, Husebye contacted legal counsel and was advised to attempt further deliveries of the additional petitions that evening. At approximately 7:30 p.m., Husebye telephoned Jaeger at his home and asked if Jaeger would accept additional petitions. Jaeger responded that he would not. At approximately 10:45 p.m., Husebye attempted to deliver the additional petitions to personnel on duty at the State Capitol. He was denied entry to the building by security personnel. Finally, at approximately 11:30 p.m., Husebye mailed the remaining petitions to the Secretary of State's office by certified mail. The package was postmarked July 5, 1995, and was received by the Secretary of State's office on July 6, 1995. Deeming the submission untimely, Jaeger returned the unopened package of petitions to Husebye, and Husebye gave the package to his attorney for safekeeping.

Jaeger subsequently determined that the 344 petitions submitted before 5 p.m. on July 5, 1995, contained 12,409 signatures, 367 short of the 12,776 signatures required to refer a legislative enactment. Husebye does not quarrel with that determination. The disputed petitions purport to contain 587 signatures. Jaeger advised Husebye that the referral attempt had failed, and Husebye filed this application for an order to show cause seeking expedited relief from this court.[1]

■ All decisions of the Secretary of State regarding referendum petitions or the petition process are subject to review by the Supreme Court in the exercise of its original jurisdiction. Art. III, §§ 6 & 7, N.D. Const. These provisions are self-executing and mandatory, Art. III, § 1, N.D. Const., and our authority to review the Secretary of State's decisions on these matters is without limitation or qualification. *Municipal Services Corp. v. Kusler*, 490 N.W.2d 700 (N.D.1992); *Preckel v. Byrne*, 62 N.D. 356, 243 N.W. 823 (1932). In conducting our review, we independently examine the actions of the Secretary of State to determine whether he has complied with the law. *Municipal Services Corp., supra.*

In support of his decision to reject petitions submitted after 5 p.m., Jaeger relies upon Section 16.1–01–09(7), N.D.C.C.:

"A petition must be submitted to the secretary of state by five p.m. on the day designated as the deadline for submitting the petition."

Husebye contends that the statute conflicts with Art. III, § 5, N.D. Const., which provides in part:

"A referendum petition may be submitted only within ninety days after the filing of the measure with the secretary of state."

Art. III, § 1, N.D. Const., restricts the legislature's authority to enact laws affecting the power of referendum:

"This article is self-executing and all of its provisions are mandatory. Laws may be enacted to facilitate and safeguard, but not to hamper, restrict, or impair these powers."

■ The dispositive question in this case is whether Section 16.1–01–09(7), N.D.C.C., is in conflict with the intent of the people in directing that referral petitions be submitted within 90 days after the measure is filed and limiting the legislature to the enactment of laws which facilitate, not hamper, the referral power.

---

1. The submission of petitions referring a measure generally suspends the operation of the measure until approved or rejected by the voters.

Art. III, § 5, N.D. Const. Absent prior action by this court, Senate Bill 2202 would go into effect on August 1, 1995.

■ This court held in *State v. Richardson*, 16 N.D. 1, 109 N.W. 1026, 1029 (1906): "Unless the contrary is fixed by statute, a day extends over the 24 hours from one midnight to the next midnight." Other courts have also recognized that the term "day" generally means the full twenty-four hour period running from midnight to midnight. *See, e.g., State v. Sheets*, 338 N.W.2d 886 (Iowa 1983); *Thomas v. Department of Corrections*, 430 So.2d 1153 (La.Ct.App. 1983); *Nelson v. Sandkamp*, 227 Minn. 177, 34 N.W.2d 640 (1948); *Leach v. Chu*, 150 A.D.2d 842, 540 N.Y.S.2d 596 (1989); *Meisel v. Piggly Wiggly Corp.*, 418 N.W.2d 321 (S.D. 1988); *Johnston v. Board of Trustees*, 661 P.2d 1045 (Wyo.1983); *see also* 74 Am.Jur.2d Time § 11 (1974); 86 C.J.S. Time § 12 (1954). Webster's New World Dictionary 361 (2nd ed. 1982), says that the "civil or legal day is from midnight to midnight." Finally, the common law rule was that a day consists of the full twenty-four hours and an obligation required to be performed within a certain number of days may be performed until midnight of the final day. II Blackstone, Commentaries *141.

■ Because the power of the people to reject laws under the power of the referendum is as broad as the power of the legislature to enact laws, *Dawson v. Tobin*, 74 N.D. 713, 24 N.W.2d 737 (1946), we presume that the people intended the normal, broad, and generally accepted meaning of the term "day." *See, e.g., State ex rel. Backes v. A Motor Vehicle*, 492 N.W.2d 595 (N.D.1992); *Cardiff v. Bismarck Public School District*, 263 N.W.2d 105 (N.D.1978). In requiring that petitions be submitted to the Secretary of State within 90 days, the people thereby gave petitioners a full twenty-four hour period on the 90th day to submit petitions. In reaching this conclusion, we are guided by the principle that referendum provisions in the constitution must be liberally construed, and any doubt should be resolved in favor of the exercise of this right by the people. *McCarney v. Meier*, 286 N.W.2d 780 (N.D. 1979). Accordingly, we hold that Art. III, § 5, N.D. Const., allows submission of referral petitions until midnight of the 90th day.

We are aware that, in the specific context of filing election petitions, a split of authority has developed. Numerous courts hold that the generally accepted meaning of "day" applies, so that a petition may be filed at any time until midnight of the last day. *See, e.g., Application of Byrne*, 19 N.J.Super. 313, 88 A.2d 283 (1952); *In re Norton*, 34 A.D. 79, 53 N.Y.S. 1093 (1898); *Cross v. Cohen*, 183 Misc. 611, 50 N.Y.S.2d 42 (Sup.Ct.1944); *State ex rel. Haffner v. Green*, 160 Ohio St. 189, 115 N.E.2d 154 (1953); *State ex rel. Jones v. Board of Deputy State Supervisors*, 93 Ohio St. 14, 112 N.E. 136 (1915); *Earl v. Lewis*, 28 Utah 116, 77 P. 235 (1904). Other jurisdictions, however, have held that nominating petitions must be filed in the office of the appropriate official before the close of regular business hours on the final day. *See, e.g., Daniels v. Cavner*, 404 Ill. 372, 88 N.E.2d 823 (1949); *Johnson v. Holm*, 198 Minn. 192, 269 N.W. 405 (1936); *In re Norton*, 25 Misc. 48, 53 N.Y.S. 924 (Sup.Ct.), *reversed*, 34 A.D. 79, 53 N.Y.S. 1093 (1898); *State ex rel. Earley v. Batchelor*, 15 Wash.2d 149, 130 P.2d 72 (1942); *State ex rel. McQuesten v. Hinkle*, 130 Wash. 525, 228 P. 299 (1924).

In determining which line of cases is persuasive in interpreting the North Dakota electorate's intent in enacting the 90–day requirement in Art. III, § 5, N.D. Const., we look to the language construed in each case. Those cases holding that petitions must be filed by the close of normal business hours on the final day involve statutory language requiring that the documents be "filed" with a particular officer by a particular date. Many of these cases stress the nature of filing, which requires more than mere submission to the officer and includes notice to the general public by inclusion in the official records of the office.

■ Our constitutional provision does not require that the referendum petition be filed within 90 days, but provides: "A referendum petition may be *submitted* only within ninety days after the filing of the measure with the secretary of state." Art. III, § 5, N.D. Const. [Emphasis added]. Prior to 1978, this constitutional provision did use the term "filed." Old Art. II, § 25 said: "Such petition shall be filed with the Secretary of State

not later than ninety days after the adjournment of the session of the legislature at which such measure was enacted." We assume that the people's decision to change the language of the constitutional provision was intended to also change the meaning. *See, e.g., Bostow v. Lundell Mfg. Co.,* 376 N.W.2d 20 (N.D.1985); 1A Sutherland, Statutory Construction § 22.30 (5th ed. 1993).

■ As construed in the prior cases, "filing" requires not only presentment of the document to the public official, but the officer's action of accepting it and placing it into the official records of the office for public examination. Similarly, this court has held, in the context of liens, that filing requires more than merely leaving the documents in the office of the appropriate official. *Powers Elevator Co. v. Pottner,* 16 N.D. 359, 113 N.W. 703 (1907). Filing implies not only presentation, but official action to place the document into the permanent record.

By contrast, the term "submit" has a much less restrictive meaning. Webster's New World Dictionary 1418 (2nd ed. 1982), defines "submit" as "to present or refer to others for decision, consideration, etc." *See also* 83 C.J.S. Submit (1953) ["The verb 'submit' is defined generally as meaning to present for determination"]. Submitting does not imply any required action on the part of the recipient, but would be complete upon presentation. We conclude that, by changing the constitutional requirement from "filed" within 90 days to "submitted" within 90 days, the people intended a less restrictive requirement. The rationale of those cases holding that petitions must be filed by the close of normal business hours is inapplicable.

■ Jaeger also asserts that, because the bill was filed at 4:48 p.m. on April 6, 1995, the 90–day period within which to submit petitions expired at 4:48 p.m. on July 5, 1995. Thus, he asserts, Section 16.1–01–09(7) actually *extended* the period for submitting petitions. However, it is almost universally accepted that, unless concerned with priority between two events occurring on the same day, a day is considered an indivisible unit of time, and fractions of a day are disregarded in computing time. *See, e.g., Burnet v. Willingham Loan & Trust Co.,* 282 U.S. 437, 51

S.Ct. 185, 75 L.Ed. 448 (1931); *In re Burke,* 60 B.R. 665 (Bankr.D.Conn.1986); *Sioux Valley Hospital Ass'n v. Tripp County,* 404 N.W.2d 519 (S.D.1987); II Blackstone, *supra;* 74 Am.Jur.2d Time §§ 13–14 (1974); 86 C.J.S. Time § 12 (1954); Annot., 20 A.L.R.2d 1249, § 2 (1951); *cf.* Section 1–02–15, N.D.C.C. ["The time in which any act provided by law is to be done is computed by excluding the first day and including the last, unless the last is a holiday, and then it also is excluded."]. We reject the suggestion that the exact time of filing of a bill controls the time on the 90th day within which referral petitions must be submitted.

■ Jaeger argues that, even if the constitutional provision was intended to allow submission of petitions until midnight of the 90th day, Section 16.1–01–09(7), N.D.C.C., is a reasonable regulation which facilitates and safeguards the constitutional right.

■ Jaeger cites cases in which we have upheld various statutory limitations upon the power of referral. Jaeger correctly emphasizes that the power of the people to refer and initiate laws is not absolute, but is subject to reasonable regulation through laws meant to facilitate those powers. *Bolinske v. North Dakota State Fair Ass'n,* 522 N.W.2d 426 (N.D.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 197 (1995). Thus, we have upheld statutes which require signers of referral petitions to be qualified electors, provide that no person may sign a petition more than once, require that the signer list a post office address and the date of signing, and require that the petition circulator sign an affidavit on information and belief that the signatures are genuine and that the signers are qualified electors. *See Dawson v. Meier,* 78 N.W.2d 420 (N.D.1956); *Schumacher v. Byrne,* 61 N.D. 220, 237 N.W. 741 (1931); *Wood v. Byrne,* 60 N.D. 1, 232 N.W. 303 (1930). However, in upholding such statutory restrictions, we have stressed that their intent was to discourage fraud and abuse, and minimize mistakes that might occur in the referral process. *See Dawson v. Meier, supra.* Thus, we concluded that such statutes facilitate and safeguard, rather than

hamper, restrict, or impair the referral power.

The statute at issue in this case does not deter fraud or abuse of the process, but merely shortens the period within which petitions may be submitted to the Secretary of State. While the statute may, as Jaeger argues, create a "reasonable" time restriction, that is not the standard it must meet. A statute which shortens the constitutionally required period for submitting petitions, be it by a week, a day, or, as in this case, seven hours, without a countervailing enhancement for the referral process, cannot possibly be construed to "facilitate and safeguard" the referral power. Jaeger cites legislative history to show that the statute was intended to alleviate confusion about the time in which petitions may be filed. As evidenced by this case, the statute did more to create controversy than to alleviate confusion. It is obvious that a statute which shortens the constitutionally prescribed period for submission of petitions hampers, restricts, and impairs the referral powers reserved to the people in Article III. Accordingly, Section 16.1–01–09(7), N.D.C.C., is unconstitutional.

■■■■■ It is undisputed that Husebye attempted to submit the additional petitions to Jaeger at his home on the evening of the 90th day, attempted to deliver them to the Secretary of State's office at the state capitol at approximately 10:45 p.m., and, as a last resort, sent the petitions by certified mail, postmarked before midnight, to the Secretary of State's office. He made all reasonable attempts to submit the petitions within the time constitutionally allowed. Under these specific facts, we conclude that the appropriate remedy is to consider the disputed petitions timely submitted, and direct Jaeger to now accept them to "pass upon each petition."[2] *See* Art. III, § 6, N.D. Const.

We express no opinion about the validity of the signatures on the petitions. Our opinion resolves only the issue of Jaeger's duty to accept the disputed petitions for review. Our resolution of the constitutional issue

makes it unnecessary to address the remaining issues raised by the parties.

We direct counsel for Husebye to forthwith deliver the disputed petitions to Jaeger, and we order Jaeger to immediately accept the disputed petitions to "pass upon" them for sufficiency.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.

---

2. We note that the Secretary of State has no authority to rule on the constitutionality of statutory directives, and therefore Jaeger did the only thing he could do when faced with the attempted

submission of petitions after 5:00 p.m. *Cf. State ex rel. Johnson v. Baker,* 74 N.D. 244, 21 N.W.2d 355 (1945) [state auditor had no authority to question constitutionality of a statute].