**In re Robert J. BURKE, Debtor.**

**Laurence NADEL, Trustee for Robert J. Burke, Plaintiff,**

**v.**

**FRUITVILLE PIKE ASSOCIATES, Defendant.**

**Bankruptcy No. 5–82–00194.**

**Adv. No. 5–83–0496.**

United States Bankruptcy Court, D. Connecticut.

May 8, 1986.

Thomas M. Germain, Yules & Yules, P.C., Hartford, Conn., for debtor.

Ira B. Charmoy, Levin & Charmoy, P.C., Bridgeport, Conn., for defendant.

MEMORANDUM OF DECISION

ALAN H.W. SHIFF, Bankruptcy Judge.

In its present posture,[1] this controversy involves the amount of protection the defendant is entitled to after conveying real property, located in Lancaster County, Pennsylvania, to the debtor's estate. The principal issue to be considered is whether the original transfer to the defendant occurred before or after the order for relief. Subsidiary issues involve the right of the plaintiff to deduct rent payments received by the defendant prior to the conveyance and the right of the defendant to add its attorney's fees to the amount of its lien.

**I**

On October 7, 1982, an involuntary Chapter 7 petition was filed against Robert J. Burke ("Burke").[2] On December 29, 1982, Burke, the president and sole shareholder of The Realty Group, Inc., which owned the subject property, signed a deed conveying the property to the defendant.[3] At the closing, on January 10, 1983, the defendant paid $87,948.51 as follows: a direct payment of $15,000.00 to Burke, a mortgage held by The Exxon Corporation in the amount of $68,388.91, preconveyance tax obligations of $3,248.51, an adjustment of $111.09 and attorney's fees of $1,200.00.[4]

On March 11, 1983, during a hearing scheduled on the involuntary petition, the debtor consented to the entry of an order for relief and filed a pleading entitled "Consent to Entry of an Order for Relief".[5] On March 16, 1983, the order for relief was signed by me and entered by the clerk in the case docket.[6] On that same date the deed executed by Burke on December 9, 1982, was recorded by the defendant in the Lancaster County, Pennsylvania land records.[7] On March 16, 1983,[8] this case was converted to a case under Chapter 11, and on April 13, 1983, the plaintiff was appointed Chapter 11 trustee. On October 10, 1985, the defendant conveyed the property to the Burke estate pursuant to the September 20, 1985 order of this court, entered in accordance with the stipulation of the parties. During the period that the defendant owned the property, it received rent in the aggregate amount of $40,000.00 and paid taxes and other expenses of $2,644.64.[9]

**II**

From the arguments of counsel at the October 22, 1985 hearing, it appears that they initially agreed that if the transfer of the property from Burke to the defendant occurred *during* the so-called "gap" period, between the filing of the involuntary petition and the order for relief, then, under Code § 549(b),[10] the transfer would be valid against the plaintiff/trustee to the extent

---

1. In his amended complaint, filed January 3, 1984, the plaintiff sought, *inter alia,* "a judgment requiring the defendant to turn over the debtor's property to the trustee." As noted *infra,* however, the property has been turned over to the estate.

2. On the same date involuntary petitions were filed against Linda Burke, Burke Enterprises, Inc. and The Realty Group, Inc.

3. Stipulation, October 18, 1985, ¶¶ 2, 3.

4. Stipulation, October 18, 1985, ¶ 4.

5. Stipulation, October 18, 1985, ¶ 5.

6. Bankruptcy Rule 5003(a) provides:
   (a) BANKRUPTCY DOCKETS. The clerk shall keep bankruptcy dockets recording all judgments and orders and the activity in each case as prescribed by the Director of the Administrative Office of the United States Courts. The entry of a judgment or order in a docket shall show the date the entry is made.

7. Stipulation, October 18, 1985, ¶ 7.

8. Since the order for relief was not entered until March 16, 1983, the clerk's March 11, 1983 docket entry "Conversion To Chapter 11 filed by Attorney Verrillo on behalf of debtor" is merely a listing of a motion to convert. The effective date of that conversion under Code § 706(a) must follow the entry of the order for relief.

9. Stipulation, October 18, 1985, ¶ 8.

10. Code § 549(b) applicable in this case, provides:
    Postpetition Transactions.
       (b) In an involuntary case, a transfer that occurs after the commencement of such case but before the order for relief is valid against the trustee to the extent of any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

of \$89,393.15, consisting of the payments made by the defendant at the closing, *see supra*, p. 666, less the \$1,200.00 attorney's fee, plus the \$2,644.64 subsequent payment for additional taxes and expenses. But if the transfer occurred *after* the order for relief, then Code § 550(d) [11] would apply and the defendant's lien under that subsection would secure \$74,393.15, consisting of all the payments included under the § 549(b) analysis except \$15,000.00 paid directly to Burke.

The plaintiff, however, takes the position that the transfer occurred after the order for relief and that \$74,393.15, secured by the § 550(d) lien, should be reduced by the \$40,000.00 rent payments received by the defendant prior to the turnover of the property to the estate. The defendant, on the other hand, contends that the transfer occurred before the order for relief and therefore opposes that deduction. The defendant further argues that its \$1,200.00 attorney's fee should be added to the amount protected under § 549(b), but concedes that \$2,644.64 paid for post transfer taxes and expenses should be offset and deducted from the rent it received.[12] Thus, the plaintiff claims that the defendant is entitled to \$34,393.15 under a § 550(d) analysis, and the defendant claims \$87,948.51 under § 549(b).

### III

In order to determine whether the transfer occurred before or after the order for relief, it is necessary to ascertain the effective date of that order. The plaintiff argues that the effective date of the order for relief was March 11, 1983, the date Burke consented to its entry.[13] The defendant claims that the effective date was March 16, 1983, the date the order was entered by the clerk on the case docket.

Bankruptcy Rule 9021(a), which in relevant part essentially tracks Rule 58 F.R. Civ.P., provides:

> Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document. A judgment is effective when entered as provided by Rule 5003.

Rule 54(a) F.R.Civ.P., made applicable here by Bankruptcy Rule 7054(a), contains the following definition:

> "Judgment" as used in these rules includes a decree and any order from which an appeal lies.

The plaintiff argues that since judgments in civil or criminal actions in the District Court mark the conclusion of trials, Rule 58 is "basically for purposes of appeal"; an order for relief, on the other hand, has other effects such as establishing a lien under Code § 549(b).[14] The plaintiff also argues that Burke's consent to the entry of an order for relief eliminated the possibility of an appeal.[15] Therefore, according to the plaintiff, an order for relief

---

11. Code § 550(d) applicable in this case provides:
Liability of transferee of avoided transfer.
    (d)(1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—
    (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by such transferee from such property; and
    (B) any increase in value as a result of such improvement, of the property transferred.
    (2) In this subsection, "improvement" includes—
    (A) physical additions or changes to the property transferred;
    (B) repairs to such property;
    (C) payment of any tax on such property;

    (D) payment of any debt secured by a lien on such property;
    (E) discharge of any lien against such property that is superior or equal to the rights of the trustee; and
    (F) preservation of such property.

12. Tr. October 22, 1985 at 27–8.

13. Plaintiff's Memorandum of Law, May 17, 1985 at 4.

14. Tr. October 22, 1985 at 7, 8, *see also* 6–10. (Note: The plaintiff incorrectly referred to Rule 59 during oral argument. The context of his argument, however, makes it clear that he relies upon Rule 58.)

15. Plaintiff's Memorandum of Law, May 17, 1985 at 4.

is not a "judgment" as defined in Rules 9021(a) and 58. I do not agree. Parenthetically it should be observed the "judgment" as defined by Rule 54(a) *"includes* a decree and any order from which an appeal lies" (emphasis added), so that the plaintiff's attempt to exclude other meanings must fail. Moreover, his argument that Burke's consent eliminated an appeal is neither accurate nor persuasive. Although an appeal by Burke would likely fail absent a showing of fraud or other reason why he should not be bound by his consent to the entry of the order for relief, an appeal may nonetheless lie.

More to the point, the essence of the order for relief is the effect it has upon parties and others, not the procedural path that led to its entry. It is because an order for relief not only reaches a conclusion regarding an involuntary petition from which an appeal might lie but also sets in motion the future course of the case, establishing for some and extinguishing for others certain rights and duties, it is all the more important that the order have all the attributes of a judgment, including the docketing procedure, so that all parties in interest will have easy access to its effective date.

The plaintiff further argues that although Part VII of the Bankruptcy Rules, which deals with adversary proceedings, applies to involuntary proceedings, Rule 58 F.R.Civ.P. (relating to the effective date of a judgment) is not adopted in Part VII but in fact is adopted through Bankruptcy Rule 5003, which does not specifically apply to involuntary proceedings.[16] The plaintiff incorrectly traces the derivation of the rule making an order for relief effective when entered by the clerk in the case docket. It is not Part VII or Rule 5003 but rather Rule 9021(a) which, as noted, makes judgment effective when entered on the case docket.

Bankruptcy Rule 1018 makes Rule 7054(a) and Rule 54(a) F.R.Civ.P. applicable in "all proceedings relating to a contested involuntary petition ..." The proceeding here involved an adversary proceeding which was ultimately settled by Burke's consent to the entry of an order for relief. Had the order for relief in this case followed a full trial under Code § 303(h), the order for relief would clearly be a judgment as defined in Rule 7054(a). That result should not change simply because Burke consented to the entry of the order. All the consent did was obviate the necessity for a trial and provide a basis for the entry of an order for relief.

By the plaintiff's logic, a debtor's consent at any time and by any degree of formality governs the effective date of the order for relief. Apart from the difficulty of proving the precise time the consent was given in cases when it was not done in open court, the plaintiff's argument fails to recognize the interest of others, not parties to the proceeding relating to a contested involuntary petition, in having the effective date of the entry of the order for relief uniformly fixed in every case by an easily ascertainable date. Including an order for relief within the definition of judgment accomplishes that result.

No persuasive reason has been given or authority cited to support the plaintiff's contention that the effective date of the order for relief was when Burke consented to the order. I accordingly conclude that the order for relief is a judgment as defined in Rule 54(a), and that under Bankruptcy Rule 9021(a), its effective date is March 16, 1983.

Since the recording of the conveyance in the Lancaster County, Pennsylvania land records and the docketing of the order for relief in Burke's involuntary case both occurred on March 16, 1983, it is necessary to determine when on March 16 the order for relief entered. Although as a general principle, the law does not recognize fractions of a day, "the legal fiction that a day is an indivisible period of time will be disregarded and the court will determine and note the actual priority 'where one day only is involved, and the rights of litigants depend

---

**16.** Tr. October 22, 1985 at 9.

on priority in time of two occurrences on that day, and the priority can be established.'" *In re Dejay Stores, Inc.*, 220 F.Supp. 497, 501 (S.D.N.Y.1963). *See also In re Kleitz*, 6 B.R. 214, 216–7 (Bankr.D. Nev.1980).

The docket sheet in this case has two entries on March 16, 1983. The first listed a "Motion for Order," which was time stamped at 4:20 p.m. The second entry was the "Order for Relief," which was not time stamped. For the reasons that follow, the entry of the order for relief may not be deemed to have occurred any earlier than 4:20 p.m. on March 16, 1983.

As noted, under Bankruptcy Rule 9021(a), judgments are effective when entered as provided in Rule 5003(a). Rule 5003(a), which is similar to Rule 79(a) F.R. Civ.P., *see* Advisory Committee Note, requires the clerk to maintain dockets recording all judgments and orders and the date each entry is made. Under Rule 79(a) F.R. Civ.P., all entries must be made chronologically. While, unlike Rule 79(a), the Bankruptcy Clerk is not specifically required by Bankruptcy Rule 5003(a) to enter items on the docket chronologically, it is assumed that the clerk followed Rule 79(a) and did make docket entries chronologically since there is no logical basis for the assumption that the clerk reversed the order of the entries on March 16, 1983. Accordingly, the order for relief in this involuntary case is deemed to have become effective no earlier than 4:20 p.m., i.e., after all steps in the transfer of the realty to the defendant had been completed.[17]

### IV

■ Having concluded that the transfer occurred during the gap period and that § 549(b) applies, it is necessary to focus on the plaintiff's claim that the defendant's lien must be reduced by the $40,000.00 the defendant received as rent prior to the conveyance of the property to Burke's bankruptcy estate. On that point the plaintiff urges the court to consider the entire transaction, namely, what the defendant got and what it gave up until the property was reconveyed. In support of that position, the plaintiff argues that the purpose of § 549(b) is to protect the transferee from any loss as a result of the avoidance of the transfer.[18] The plaintiff further argues that the lease is a part of the estate's interest in the property, and that since the post petition transfer could be avoided and the leasehold interest returned to the estate, the rent payments received by the defendant, representing that part of the leasehold interest which had been used, should also be returned to the estate.[19]

One of the principal purposes of the Bankruptcy Code, as with its predecessors, is to maximize a debtor's estate so that a debtor attempting to reorganize may do so with a plan that will make distributions to creditors as meaningful as circumstances permit. Consistent with that congressional goal, property of a debtor's estate is defined by Code § 541 in broad terms, and a trustee is given extensive powers to avoid certain prepetition and post petition transfers. If, for example, a debtor transferred real property, defined under Code § 547 as a preference, the trustee could avoid the transfer and retrieve the property. If during the preference period, the transferee received rental payments or sold a fixture on the property, it would be incongruous for the transferee to be able to keep the rental or sale proceeds. The trustee would, under those circumstances, be entitled to the money as well as the return of the real property. A post petition transfer avoided under § 549 should yield no less to the estate.

---

17. The date of the transfer from Burke to the defendant is also in dispute, the plaintiff claiming the transfer occurred at the time the deed was recorded whereas the defendant argues that the transfer was at the time of the closing when the deed was delivered. Since I have determined that the order for relief was after 4:20 p.m. and therefore after the deed was recorded, I need not determine if the transfer was earlier than March 16, 1983.

18. Tr. October 22, 1985 at 12, 13.

19. Tr. October 22, 1985 at 14, 15.

The Code makes no distinction between property transferred during the gap period under § 303(f) and property transferred post petition without any code or court authorization, except that transfers during the gap period entitle the transferee to some additional protection upon avoidance of the transfer. Reading § 549(b) with § 550(d) demonstrates that Congress intended to provide a measure of protection to a good faith transferee of a debtor who conveyed property during the gap period by giving the transferee a lien on improvements plus any other allowed value given in exchange for the transfer. The idea was an attempt to return the transferee to the economic position he was in before the transfer, at least to the extent provided by those sections. Permitting the transferee to keep the net proceeds from the use of the property as well as the protection provided by the Code would give the transferee funds at the expense of the estate which could not have been intended by Congress. I accordingly conclude that the defendant's lien should be reduced by the $40,000.00 rental payments.

█ The defendant claims that the $1,200.00 legal expense it incurred during the purchase of the property from Burke should be included as part of the value protected under § 549(b) because value is defined to include "services". I do not agree.

The purpose of § 549(b) is to give the transferee a measure of protection for value given to the debtor. The transferee's legal expenses provide no value to the debtor and do not fall within the penumbra of § 549(b).

### V

For the reasons stated herein the defendant is entitled to a lien on the Lancaster County, Pennsylvania property, or its sale proceeds, in the amount of $49,393.15 to secure its rights under Code §§ 549(b) and 550(d), consisting of a direct payment of $15,000.00 to Burke; a mortgage held by the Exxon Corporation in the amount of $68,388.91; preconveyance tax obligation of $3,248.51; a closing adjustment of $111.09; and post-petition taxes and other expense of $2,644.64; minus $40,000.00 received by the defendant for rent prior to conveyance of the property to the Burke estate, and judgment may enter accordingly.