**In re 222 LIBERTY ASSOCIATES, Debtor.**

**222 LIBERTY ASSOCIATES, Plaintiff,**

v.

**PHILADELPHIA ELECTRIC COMPANY, Defendant.**

**Bankruptcy No. 88–11535S.
Adv. No. 88–2122S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 22, 1988.

Craig R. Tractenberg, Philadelphia, Pa., for debtor.

T.H. Maher Cornell, Philadelphia Elec. Co., Philadelphia, Pa., for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant proceeding requires us to apply a factual record established by oral stipulation to a relatively obscure Code section in issue, a difficult combination of tasks. The Code section in issue, 11 U.S.C. § 549(b), concerns treatment of post-petition transfers made by debtors during the "gap" period between the filing of an involuntary bankruptcy petition and the entry of an order for relief. We conclude that, given the policy in favor of avoidance of any post-petitions transfers, and the considerable burdens of proof placed upon post-petition transferees seeking to sustain such transfers, § 549(b) must be read narrowly. Specifically, we believe that it should only protect such transfers to the extent that value is given to the debtor between the filing of the petition and the date of the transfer and that, in any event, the transferee is obliged to establish that the transfer in issue should be allocated solely to post-petition value or services to protect the transfer. We therefore render judgment in favor of the Plaintiff–Debtor, although we enforce the Debtor's offer to apply the funds transferred to the Debtor's obligations to the Defendant, as opposed to making the Defendant repay the sum transferred to it on behalf of the Debtor.

The underlying bankruptcy case began with the filing of an involuntary Chapter 7 petition against the Debtor, 222 LIBERTY ASSOCIATES, a partnership which owns certain realty and leases commercial space therein, on May 3, 1988. The Debtor answered the petition, but ultimately consented to an order for relief, with the stipulation that the case be simultaneously converted to a Chapter 11 case, on September 8, 1988. Although the instant adversarial proceeding, naming the PHILADELPHIA ELECTRIC COMPANY (hereinafter referred to as "PECO") as a defendant, was not filed until October 6, 1988, certain events which transpired between the parties prior to that date, both in the main bankruptcy case and outside of the bankruptcy court, must be noted.

On October 21, 1986, and May 3, 1988, the Debtor filed formal complaints against PECO with the Pennsylvania Public Utility Commission, the second of which was sparked by PECO's dispatch of a "termination letter" sent to the Debtor and its tenants because of the Debtor's indebtedness to PECO, which had reached $201,-372.04 as of May 3, 1988. Although the second complaint, like the first, was ultimately dismissed, one of the Debtor's partners, Donald Wolk, paid $12,500.00 to PECO on May 6, 1988, to prevent a service termination in the realty. PECO concedes that this payment, which is the focal point of the adversary proceeding, "was credited to the debtor's account on May 19, 1988." Brief in Support of Philadelphia Electric Company to Confirm the Post–Petition Payment to Philadelphia Electric Company During the "Gap" Period Pursuant to 111 [sic] U.S.C. § 549, at 2.

On September 8, 1988, the Debtor filed a motion in the main bankruptcy case to fix the amount of its payment of adequate assurance to PECO in order that it could retain post-petition services, pursuant to 11 U.S.C. § 366(b). The parties ultimately settled this dispute by entering into a Stipulation that the Debtor would make a $15,-000.00 adequate assurance payment in installments of $5,000.00 each, on October 7, November 21, and December 20, 1988. PECO avers that, except for the $12,500.00 payment by Wolk, the Debtor has made only one $8,000.00 payment post-petition.

Meanwhile, during the "gap" period, an additional $25,017.66 of service delinquencies were accumulated.

The instant proceeding was listed for trial on November 23, 1988. The parties recited an oral stipulation of facts. We observe that this is a disfavored means of creating a record, as it is often difficult to sort out the "real" stipulation, which makes the record, when, as here, the parties go back and forth and make certain corrections to the statements of the other. We only observe that such a presentment of a case jeopardizes the party with the burden of proof, because we can only find as a fact that which is definitively on the record. This method of presentment certainly did not further the cause of PECO, which had, as we shall note, a stiff burden of proof to meet in order that it could prevail in this proceeding.

However, we allowed the parties to proceed at their peril in this fashion, and requested that briefing be completed by December 16, 1988. The parties each filed short and timely (in the case of PECO, early) submissions. As there are no factual issues to resolve, we utilize the narrative format in presenting our Opinion despite the fact that this is an adversary proceeding.

The Debtor contends that it can avoid Wolk's payment of $12,500.00 to PECO pursuant to 11 U.S.C. § 549. PECO claims that the transfer is exempted from avoidance by the terms of § 549(b). We begin our analysis by quoting both §§ 549(a) and (b), which provide as follows:

§ 549. Postpetition transactions

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

(b) In an involuntary case, a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

During the colloquy on November 23, 1988, the Debtor indicated that it did not seek the return of the $12,500.00, but was desirous of applying it towards its future liabilities to PECO, presumably including the payment of delinquencies arising subsequent to the entry of the order for relief or, possibly, the adequate assurance payments.

PECO's defenses appear to be the following: (1) Since the value of its services during the entire "gap" period exceeded the amount paid by Wolk, "the extent [of] any value" given by PECO "in exchange for such transfer" fits the exception of § 549(b); and (2) The Debtor should not be able to avoid a transfer made not by it, but by Wolk.

The starting point for discussion is "the general rule" established in § 549 as to all post-petition transfers: "the trustee may avoid postpetition transfers of property of the estate that are either unauthorized or that are authorized by section 303(f) [1] or section 542(c)." [2] 4 COLLIER ON BANK-

---

1. § 303

(f) Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

2. § 542

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if

RUPTCY, ¶ 549.02, at 549–5 (15th ed. 1988). Put another way, "[t]here is a general rule rendering voidable transfers that occur after the filing of the petition...." 2 COWANS BANKRUPTCY LAW & PRACTICE, ¶ 10.10, at 214 (1987 ed.).

Given this general rule, it is not surprising to learn that "[s]ubsections (b) and (c) of section 549 create two *very narrow* exceptions to the trustee's power of avoidance" (emphasis added). 4 COLLIER, *supra*, ¶ 549.02, at 549–6. *Cf. In re Isis Foods, Inc.*, 37 B.R. 334, 337 (W.D.Mo. 1984); *In re Purnell, Purnell v. Citicorp Homeowners Services, Inc.*, 92 B.R. 625, 629–31 (Bankr.E.D.Pa., 1988); and *In re Tom McCormick Enterprises, Inc.*, 26 B.R. 437, 441 (Bankr.M.D.Tenn.1983).

The substantive burdens of parties seeking to sustain post-petition transfers are further enhanced by the procedural burden expressly set forth for them in Bankruptcy Rule 6001: "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." *See also In re Brooklyn Overall Co.*, 57 B.R. 999, 1004 n. 5 (Bankr.E.D.N.Y.1986).

The results in the small body of cases which have interpreted § 549(b) bear out the result that one might expect when the substantive and procedural burdens are placed so squarely upon a particular party, *i.e.*, transferees in these cases have been uniformly unsuccessful in their respective defenses. *See In re Butcher*, 69 B.R. 198, 203 (Bankr.E.D.Tenn.1986) (transferee found not to have proven that services for which he was paid were performed in the "gap" period); *In re Bridges Enterprises, Inc.*, 62 B.R. 300, 302 (Bankr.S.D.Ohio 1986) (debtor can avoid payment for pre-petition debt made through its counsel); *In re Burke*, 60 B.R. 665, 669–70 (Bankr.D.Conn. 1986) (good faith transferee of realty from debtor, after re-conveying property, was permitted to retain a lien for the purchase price of the realty, but was not granted a lien for rentals collected between the purchase and the reconveyance of the property to the debtor and not for legal fees incurred by the transferee in the sale transaction); *Brooklyn Overall, supra*, 57 B.R.

at 1004 (absolving debtor from rent deficiency was not "value" sufficient to prevent the avoidance of a post-petition transfer); and *In re Jorges Carpet Mills, Inc.*, 41 B.R. 60 (Bankr.E.D.Tenn.1984) (trustee can recover the difference between payment made for yarn and baskets and actual value of these items).

Clearly, "value," as described in § 549(b), "does not include satisfaction or securing of a pre-petition debt." 4 COLLIER, *supra*, ¶ 549.03, at 549–11. *See also Butcher, supra*, 69 B.R. at 503; *Bridges, supra*, 60 B.R. at 302; *Brooklyn Overall, supra*, 57 B.R. at 1004; and 2 COWANS, *supra*, ¶ 10.10, at 214–15. However, as Cowans points out, "[t]here may be a considerable practical problem as to allocations" in determining whether a transfer is made for a pre-petition or a post-petition obligation. *Id.* at 215. Only payments allocated specifically to post-petition obligations will be exempt from avoidance on the basis of § 549(b).

■ We now apply these legal principles to the instant factual record, such as it is. PECO's concession that Wolk's payment was credited exclusively towards the Debtor's account, which appears to mean its delinquency at the time of the transfer, is pivotal. Since there is no evidence as to how Wolk or the Debtor sought to allocate the $12,500.00 payment, PECO had the right to allocate this payment as it wished. *See In re Pristas*, 742 F.2d 797, 801 (3d Cir.1984); *In re Comer*, 716 F.2d 168, 175 (3d Cir.1984); *In re Penn Jersey Corp.*, 72 B.R. 981, 983–84 (Bankr.E.D.Pa.1987); and *Page v. Wilson*, 150 Pa.Super. 427, 433, 28 A.2d 706, 709 (1942). However, PECO has not indicated, in any way, that it allocated the payment as an advance for future services. Instead, it applied the payment "to the debtor's [presumably delinquent] account on May 19, 1988." PECO therefore apparently opted to allocate the payment towards the Debtor's pre-petition indebtedness. A payment so credited is, almost by definition, an avoidable transfer pursuant to § 549.

■ *Had* PECO sought to allocate the payment to, specifically, post-filing, "gap"

the case under this title concerning the debtor had not been commenced.

period services, we then would have been presented with the difficult issue raised by PECO in its first line of defense, *i.e.*, whether it was entitled to retain the entire payment because the value of its services throughout the entire "gap" period services exceeded the amount of the payment. We note that we would be disinclined to read § 549(b) as so suggested by PECO, for the following three reasons. First, § 549(b) is, generally, a very narrow exception to the power of the trustee to avoid post-petition transfers. It should not, therefore, be read broadly in any circumstances.[3] Secondly, the language of § 549(b), allows an exception only for "an exchange for such transfer," suggesting that the *quid* of the transfer must have occurred prior to or simultaneously with its *quo*. Thirdly, as the *Burke* case emphasizes, the effect of an avoidance of a transfer and the limitations thereto set forth in §§ 549(b) and (c) are to "attempt to return the transferee to the economic position he was in before the transfer, ..." 60 B.R. at 670. The Debtor could not have, by definition, received future services prior to the transfer in issue. Returning the parties to the position they were in prior to the transfer would not seem to contemplate allowing the transferee to credit a "gap" period payment towards future services. Therefore, it does not seem appropriate to allow a transferee to assert that services performed after the transfer can be considered in ascertaining "value" to offset the avoidance of a "gap" period transfer.[4]

PECO did not meet its burden of proving either (1) that part of the $12,500.00 payment was allocated to post-payment services, or (2) what the value of services provided between May 3, 1988, and May 6, 1988, was, *i.e.*, the value of services provided post-filing, but prior to or contemporary with the payment. Had it successfully done so, PECO may have, through the medium of § 549(b), defended against avoidance of the transfer insofar as it included payment for services received between May 3, 1988, and May 6, 1988. However, PECO failed to meet its burdens of proving either of these elements. The entire payment is therefore avoidable.

We also conclude rather easily that the second defense of PECO lacks merit, *i.e.*, that it was significant that Wolk, as opposed to the Debtor itself, made the transfer. It is apparent that Wolk was acting as, and treated by PECO as, the agent of the Debtors in making the payment. The Debtor can therefore be properly classified as the transferor in this transaction. *Cf. Bridges, supra,* 62 B.R. at 302–03 (although the Debtor's attorney was the co-drawee of a check paid to transferee and might have been considered the "initial transferee," the transaction was viewed as a transfer from the Debtor to the ultimate recipient of the fund because the attorney was acting solely as the Debtor's agent in effecting payment).[5]

As we indicated above, the Debtor expressed a willingness to allow the $12,500.00 payment to be credited towards the amounts for future services, including the adequate assurance payments required under the parties' stipulation, rather than being returned to the Debtor. Given the Debtor's persistence in its poor record of making payments properly due to PECO for services even after the filing, this is an equitable and salutary suggestion. We shall allow PECO to retain the $12,500.00, subject to the Debtor's declaration, within a few days hereafter, as to how it wishes this sum to be allocated.

**3.** This is borne out by the fact that, pursuant to 11 U.S.C. § 303(f), quoted at page 383 n. 1 *supra,* a transfer made to a party who, even though ignorant of the filing of a petition against the debtor and who deals with the debtor in the ordinary course of business, may be subject to having such a transfer set aside if an order for relief is ultimately entered.

**4.** We note that claims of PECO for services rendered in the "gap" period which were unpaid are considered to be pre-petition rather than post-petition claims. 11 U.S.C. § 502(f).

**5.** This conclusion is also supported by noting that § 542(c), quoted at page 383 n. 2 *supra,* protects only a party who, unaware of the bankruptcy filing, makes a payment on behalf of the debtor to a transferee. It does *not* protect the transferee, irrespective of its knowledge of the filing. This, in the instant scenario, § 542(c) could conceivably protect Wolk, but it would not protect PECO.

An Order which shall effect the conclusions set forth in this Opinion will be entered.

### ORDER

AND NOW, this 22nd day of December, 1988, by agreement of Counsel for the parties that this matter was presented to the court in an oral Stipulation of Facts recited in court on November 23, 1988, and upon consideration of the Briefs submitted by the parties in support of their respective positions thereafter, it is hereby ORDERED as follows:

1. Judgment is entered in favor of the Plaintiff, 222 LIBERTY ASSOCIATES, and against the Defendant, PHILADELPHIA ELECTRIC COMPANY. Consequently, the payment of $12,500.00 made by Donald Wolk on behalf of the Debtor to the Defendant is avoidable pursuant to 11 U.S.C. § 549.

2. Nevertheless, the Defendant may retain the $12,500.00 payment, and shall allocate same to the Debtor's adequate assurance payment or other indebtedness as directed by a letter to be sent to the Defendant's counsel by the Debtor or its counsel on or before December 30, 1988.