In re ROANOKE IRON & BRIDGE WORKS, INC., Debtor.

Charles R. ALLEN, Jr., Trustee in Bankruptcy for Roanoke Iron & Bridge Works, Inc., Plaintiff,

v.

RIB DETENTION EQUIPMENT, INC., Roanoke Iron & Bridge Works, Inc., Defendants.

Bankruptcy No. 7–86–01442.
Adv. No. 7–87–0011.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Nov. 2, 1988.
On Motion to Reconsider April 14, 1989.

Solomon Lee Van Meter, Roanoke, Va., for plaintiff.

Richard E.B. Foster, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The matter before the Court for decision involves an adversary proceeding whereby the trustee seeks to set aside a transfer of assets under section 549 and to recover the value of the property transferred under section 550. The section 549 issue has been tried, briefed and argued by the parties. The following constitutes the Court's findings of fact and rulings of law.

### Facts

Roanoke Iron & Bridge Works, Inc. (Roanoke or the debtor) operated a detention cell business. On August 29, 1986, all officers and directors of Roanoke resigned and all the employees were terminated. After the resignations and terminations, counsel for Roanoke arranged for the employment of Wayne Saunders as general manager of Roanoke. The evidence at trial revealed that, prior to the filing of the involuntary proceeding, one of the main purpose for Mr. Saunders' employment was to serve as the company official to sign all documents necessary to effect a bulk transfer of assets from Roanoke to RIB Detention Equipment, Inc. (RIB Detention).

On September 2, 1986, RIB Detention Equipment, Inc. (RIB Detention) began operation of a detention cell business with substantially the same assets as Roanoke and substantially the same officers and directors who operated Roanoke prior to August 29, 1986. Trial memorandum of trustee at p. 6.

On September 9, 1986, RIB Detention and Roanoke executed a bulk transfer agreement for transfer of certain inventory, office machinery, equipment, furniture, work in process and accounts receivable to RIB Detention. RIB Detention Exhibit A. In consideration for the transfer of assets, RIB Detention agreed to assume certain of Roanoke's accounts payable and notes payable, to assume $511,320.00 of an outstanding note owing from Roanoke to Dominion Bank, and to perform the work necessary to complete certain Roanoke work in process. Roanoke's creditors received notice of the proposed bulk transfer on September 10, 1986. Trial memorandum of trustee at p. 7.

On September 19, 1986, an involuntary Chapter 7 petition was filed against Roanoke. Pursuant to the terms of the bulk transfer agreement, the transfer was completed on September 20, 1986, one day after the involuntary petition was filed.

At trial RIB Detention introduced evidence to show that the value it gave Roanoke in exchange for the transfer was as follows: (1) assumption of prepetition accounts payable of Roanoke valued at approximately $1,894,000.00 (defendant's schedule F); (2) assumption of prepetition notes payable valued at approximately $430,250.00 (defendant's schedule F-1); (3) completion of Roanoke work in process having a value of $2,900,000.00; and (4) assumption of $511,320.00 of prepetition

secured debt owed by Roanoke to Dominion Bank.

The value of the work in process is derived from the testimony of Mr. James Allen and is based on his analysis of the cost to complete by an independent third party contractor. Mr. Allen is a former employee of Roanoke who went to work for RIB Detention immediately after the mass exodus from Roanoke on August 29, 1986.

It is clear from Mr. Allen's testimony that RIB Detention is not an independent third party contractor such as the one he used in his analysis. Further, the Bulk Sales Agreement offered as an exhibit at trial shows that the parties valued the work in process at $775,753.00 in the September 1986 when the sale closed.

### Law

Section 549(a) of the Code permits the trustee to avoid certain postpetition transfers of estate property which occur after the bankruptcy petition is filed and which are authorized only under section 303(f). 11 U.S.C. § 549(a). An exception to the trustee's avoiding powers is found in section 549(b) which provides that postpetition transfers are protected to the extent that the transferee gives "any value ... but not including satisfaction or securing of a debt that arose before the commencement of a case...." 11 U.S.C. § 549(b). RIB Detention maintains that the transfer in this case brings it within the "safe harbor" of section 549(b).

The trustee contends that a portion of the value given by RIB Detention is value excluded from the safe harbor of section 549(b) because the assumption of the accounts payable, the notes payable and the Dominion indebtedness by RIB Detention satisfy or secure debt "that arose before the commencement of the case." 11 U.S.C. § 549(b). Thus, it is the trustee's position that the only value given by RIB Detention was in the form of services for completion of the work in process. However, the trustee contests the $2,900,000.00 value asserted by RIB Detention for work in process and argues that the contract value of $775,753.00 is the value given.

The first issue to be resolved is whether the assumption of debt by RIB Detention is value that is excepted from the protection of section 549(b). In arguing that the assumption of prepetition indebtedness does not fall within the exception to the safe harbor of section 549(b), RIB Detention cites *Klein v. Tabatchnick,* 610 F.2d 1043 (2nd Cir.1979), as support for the proposition that a transfer of property for consideration to a transferee who is not a creditor of the bankrupt is not satisfaction of or securing of a prepetition debt. The *Klein* case was a preferential transfer case under section 60 of the Bankruptcy Act. The *Klein* court examined the elements necessary for a court to find a preferential transfer. *Id.* at 1049. Section 60 of the Bankruptcy Act, like section 547(b) of the Bankruptcy Code provides that a transfer for the benefit of a creditor and on account of an antecedent debt is avoidable as a preferential transfer. Based upon the specific statutory langauge, the Second Circuit held that the trustee must establish that the transferee is a creditor of the debtor in order to prevail on the preferential transfer issue. *Id.* at 1049. Using *Klein,* RIB Detention attempts to draw an analogy between sections 547 and 549 of the Code and arrives at the conclusion that it must be a prepetition creditor of Roanoke before the exclusion from the safe harbor of section 549(b) is operative. However, the language of section 547 is different from the language of § 549. Section 547(b)(1) states, in relevant part, that "the trustee may avoid any transfer of an interest of the debtor ... (1) to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). Thus, the language of section 547(b) clearly states that the transferee receiving the preferential transfer must be a creditor of the debtor. The language of section 549(b) is not limited to creditors. In construing any statute, the Court must first look to the language of the statute itself. *Consumer Product Safety Comm'n. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Section 549(b) states that a postpetition transfer may not be avoided

"to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer." 11 U.S.C. § 549(b). There is no mandate in section 549(b) that the transferee be a creditor. Had Congress intended that the transferee be a creditor for purposes of section 549(b), it would have been as explicit as it was in section 547(b). The avoiding powers of the trustee under sections 544 through 549 are separate and distinct. *In re Hayes*, 5 B.R. 676, 678 (Bankr.S.D.Ohio 1980). Thus, the reliance placed by RIB Detention on *Klein* is misplaced.

RIB Detention urges this Court to consider *In re Burke*, 60 B.R. 665 (Bankr.D. Conn.1986), as holding, by implication, that assumption of prepetition indebtedness by a non-creditor transferee is permissible under section 549(b). In *Burke*, the debtor conveyed real property to the transferee. *Id.* at 666. The transferee made a direct monetary payment of $15,000.00 to the debtor, assumed a mortgage equaling $68,-388.91 and paid preconveyance tax obligations of $3,248.51 as well as paying an adjustment of $111.09 along with attorney's fees. *Id.* In accordance with the stipulation of the parties and pursuant to a court order avoiding the transfer under section 549(a), the transferee ultimately reconveyed the property back to the debtor's estate. *Id.* It is significant to note that prior to trial, the parties had agreed that the assumption of the prepetition secured debt would be part of the defendant's lien under section 550(d)(1) if the transfer was found to be within the gap transfer period. Ultimately the Court found that the transfer was in the gap period and accepted the parties' agreement on the assumption of the debt. Thus, the assumption of debt issue was not litigated or decided. The main issue litigated in *Burke* was whether the section 550 lien which the parties had agreed upon should be reduced by $40,-000.00 of rent payments received by the defendant after the transfer. In addition, the defendant wanted its attorneys fees.

The Court ruled against the *Burke* defendant on both issues.

This Court finds that the *Burke* case is not dispositive of the issue of whether a transferee's assumption of antecedent debt constitutes safe harbor value under section 549(b). Accordingly, this Court holds that RIB Detention's assumption of prepetition debts equaling approximately $2,835,570.00 is value which cannot be protected by the safe harbor of section 549(b).

■ This Court now turns to the issue of whether RIB Detention's agreement to assume all the outstanding work in process constitutes "safe harbor" value under section 549(b). Section 549(b) states that services may constitute such value. This Court finds that the assumption by RIB Detention of Roanoke's ongoing work projects does constitute "safe harbor" value for the purpose of section 549(b). The parties, however, disagree as to the valuation of these ongoing work projects. The bulk transfer agreement states that the value of the contracts assumed was $775,-753.00. At trial, however, RIB Detention offered the testimony of James Allen as evidence that the cost of completion was $2,900,000.00. Allen stated that the $775,-753.00 merely represented what it would cost RIB Detention, an insider, who had information about the projects, to complete the outstanding work. According to Allen, the $775,753.00 figure did not include any provisions for inflation or risk factors. Thus, RIB Detention argues that the real value of the services rendered should be $2,900,000.00 because this is the amount that a third party would charge Roanoke to finish the job.

RIB Detention argues that its assumption of the work in process saved Roanoke from a potential claim of $2,900,000.00 and cites *In re Milwaukee County Conservation and Pub. Serv. Corp.*, 47 B.R. 846 (Bankr.E.D.Wis.1985), for the proposition that the value under section 549(b) is the value to the estate. However, Milwaukee County did not deal with section 549. *Milwaukee County* involved the trustee's recovery of a preference under section 547. The defendant in *Milwaukee County* ar-

gued that the value the trustee could recover under section 550 did not include attorneys fees which had been paid by the defendant to its counsel from the recovery. The bankruptcy court in rejecting the argument stated that "the 'value' of the preference that is recoverable is determined from the viewpoint of the trustee and estate." The court went on to hold that the payment of attorneys fees conferred no value on the estate. *Milwaukee County*, at p. 847. This Court does not find *Milwaukee County* holding to be applicable to the case at bar.

The language of section 549(b) speaks to the value which is given after the commencement of the case in exchange for the transfer. Thus, it appears that Congress contemplates that the value for purposes of section 549(b) is to be determined at the time the bulk transfer agreement is executed. Clearly at the time of execution the parties contemplated that the value of the services that RIB agreed to perform was $775,753.00. RIB Detention Exhibit A. Accordingly, the value given by RIB Detention and to be protected by the safe harbor provisions of section 549(b) is the $775,-753.00 of work in process which RIB Detention assumed. To the extent that the value of the assets transferred by Roanoke exceeds $775,753.00, the trustee may avoid the transfer under section 549 and recover under 11 U.S.C. § 550. Further evidentiary hearings will be necessary to determine the value of the property transferred by Roanoke and the related issues arising under 11 U.S.C. § 550.

An appropriate order will be entered implementing this memorandum opinion.

## ON MOTION TO RECONSIDER

The matter before the Court for decision involves the trustee's motion to reconsider this Court's memorandum opinion and order dated November 2, 1988 (Memorandum Opinion). A hearing was held on the motion to reconsider on January 24, 1989, and this Court took the matter under advisement. The following constitutes the Court's decision.

Charles R. Allen, Jr., trustee in bankruptcy (the Trustee), for Roanoke Iron and Bridge Works, Inc. (the Debtor) filed a complaint against RIB Detention Equipment, Inc. (RIB) to avoid certain postpetition transfers of assets pursuant to section 549 of the Bankruptcy Code. The defense offered by RIB was that the transfer fell within the safe harbor provisions of section 549(b). A trial on the matter was held on August 4, 1988, in Harrisonburg, Virginia. The primary issue at trial was the nature and extent of the value given by RIB to the Debtor for Debtor's transfer of assets.

The Court in its Memorandum opinion held that the assumption, by RIB, of certain prepetition accounts receivable, prepetition notes payable and a note in the amount of $511,320.00 payable to Dominion Bank did not constitute the type of value protected by section 549(b). However, this Court found that RIB's agreement to complete certain work in process for the benefit of the Debtor did constitute valid value. The Court valued the benefit conferred on the Debtor by the completion of the work in process to be $775,753.00. The Trustee moves this Court to reconsider its ruling that the sum of $775,753.00 is the amount of the protected value.

The Trustee contends that $775,753.00 constitutes the net profit which RIB would receive after completing the work in process of the Debtor. The Trustee urges this Court to calculate the profit to RIB by subtracting the remaining billings from the cost to complete. The Trustee notes, in his motion to reconsider, that the cost to complete is actually higher than $775,753.00, but argues that when the remaining billings are added to the equation, the net result is a $775,753.00 profit to RIB. *See* paragraph 7 of the Motion to Reconsider. Thus, the Trustee concludes that RIB's agreement to complete the outstanding work in process is not value flowing to the Debtor, instead it is profit to RIB. The Trustee argues that the only consideration given by RIB was the assumption of prepetition trade debt and prepetition secured debt, both of which were found to be nonprotected forms of value for the purpose of section 549(b) in the Memorandum Opinion. RIB, however, argues that the completion of the work in process did constitute value

flowing to the Debtor because it exculpated the Debtor from liability arising from potential breach of contract claims.

Before reaching the merits of the Trustee's motion to reconsider, this Court must dispose of a matter raised by RIB at the hearing. RIB argues that this Court does not have jurisdiction over the Trustee's motion to reconsider because the Memorandum Opinion does not constitute a final judgment. RIB maintains that Federal Rule of Civil Procedure 59(e) permits a trial court to alter or amend a "final" judgment as that term is defined in Federal Rule of Civil Procedure 54(a). Thus, RIB concludes that since the Memorandum Opinion is an interlocutory order, a motion to reconsider is improper.

■ This Court agrees that the Memorandum Opinion does not constitute an appealable "final decision." The Fourth Circuit in *Turshen v. Chapman,* 823 F.2d 836 (4th Cir.1987) stated that "[I]n a bankruptcy case, if a particular adversary proceeding has been finally resolved, the outcome constitutes an appealable 'final decision.'" *Id.* at 839. This Court stated at page 9 of the Memorandum Opinion that "[F]urther evidentiary hearings will be necessary to determine the value of the property transferred by Roanoke and the related issues arising under 11 U.S.C. § 550." Thus, according to *Turshen,* the Memorandum Opinion does not constitute a final decision because this Court still must determine what amount, if any, the Trustee may recover pursuant to section 550.

The fact that the decision is interlocutory does not prohibit this Court's reconsideration. Moore's states that a "trial court has plenary power over its interlocutory orders until a final judgment has been entered." *Moore's Federal Practice* (MB), ¶ 59.03, p. 59–13 (2d ed. 1987). Moore's concludes that "Rule 59 should not restrict the power of the trial court to give relief from an interlocutory order." *Id.* The Fifth Circuit in *Gallimore v. Missouri Pac. R.R. Co.,* 635 F.2d 1165, 1170–71 (5th Cir.1981), adopted this analysis in holding that the district court did not err in reversing its earlier order granting a new trial. This Court adopts the reasoning and analysis found in Moore's and *Gallimore, supra,*

and holds that it has plenary authority to alter or amend the Memorandum Opinion.

The Court has considered the Trustee's argument that RIB gave no value for the contracts because the completion of the work in process by RIB did not confer any benefit on the Debtor. RIB's promise to complete the outstanding work in process relieved the Debtor from potential breach of contract liability. If RIB's promise has no value, then paragraph 7 of RIB's Exhibit A was useless. Furthermore, RIB's agreement to complete the projects necessarily had some value. RIB's evidence showed cost to complete the contracts to be approximately $2,900,000.00, and argued that to be the value. Based upon all the evidence, the Court discounted that value. Value is defined as "a fair return or equivalent in goods and services or money for something exchanged, the monetary worth of something." *Webster's New Collegiate Dictionary,* 1977 Ed., p. 1292. The sum of $775,753.00 represents the clearest evidence to this Court of the value given for assumption of the contracts in paragraph 7 of RIB Exhibit A. The Trustee's motion to reconsider will be denied.

An appropriate order will be entered implementing this memorandum opinion.