In re GEOTHERMAL RESOURCES
INTERNATIONAL, INC.,
Debtor.

Thomas I. HAMILTON, Appellant,

v.

Thomas E. LUMSDEN, Chapter 11 Trustee of Geothermal Resources Int'l, Inc.; New East Mesa Limited Partnership; GEO East Mesa, Inc.; GEO Science (USA) Inc., Appellees.

In re GEOTHERMAL RESOURCES
INTERNATIONAL, INC.,
Debtor.

Thomas I. HAMILTON, and Ronald
P. Baldwin, Appellants,

v.

Thomas E. LUMSDEN, Chapter 11 Trustee of Geothermal Resources Int'l, Inc.; New East Mesa Limited Partnership; GEO East Mesa, Inc.; GEO Science (USA) Inc., Appellees.

Nos. 94–16219, 94–16220.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1995.

Decided Aug. 21, 1996.

Ronald E. Baldwin, Salt Lake City, Utah, and Michael Brooks Carroll, Thomas H. Kawaii and Steven W. Strain, Law Offices of Michael Brooks Carroll, San Francisco, California, for appellants.

A. Todd Berman and Patricia S. Mar, Feldman, Waldman & Kline, San Francisco, California, for appellees.

**650**

Before BROWNING, CANBY and HALL, Circuit Judges.

PER CURIAM:

Hamilton and Baldwin appeal the Bankruptcy Appellate Panel's ("BAP") partial grant of summary judgment in favor of the trustee. Because the BAP's decision disposed of all claims in the suit, we have jurisdiction under 28 U.S.C. § 158(d). We reverse and remand for further proceedings.

### I.

Geothermal Resources International, Inc. ("GEO") produces and sells geothermal energy. In 1988 and 1989, the company experienced severe financial difficulties; by the end of 1990, one of GEO's few significant assets was a 50% equity interest in the East Mesa Project, held by its subsidiary New East Mesa, Ltd. ("NEML").

Appellant Ronald Baldwin was GEO's Chief Executive Officer and Chief Financial Officer and served on GEO's Board of Directors. Appellant Thomas Hamilton was GEO's General Counsel, Vice President, and Secretary. In 1989, Hamilton informed GEO management that he planned to resign unless GEO increased his salary. Although no GEO employee had ever had a written employment contract, in August, 1989, GEO's president asked Hamilton to draft written employment agreements for Baldwin, Hamilton, and other Board members.

On November 30, 1989, creditors filed an involuntary Chapter 11 bankruptcy petition against GEO.

On December 20, 1989, GEO's Board approved five-year employment contracts for Hamilton and Baldwin. The agreements increased the salaries of Hamilton and Baldwin retroactive to September 1, 1989, and provided "Bonus Guaranty Accounts" of $1,000,000 for Baldwin and $625,000 for Hamilton to fund prospective bonus payments; GEO was to pay appellants 10% annual interest on these accounts. Baldwin and Hamilton could be terminated only for cause; if terminated without cause, they would receive their full salaries for the remainder of the five years plus the funds in their "bonus guarantee" accounts. Baldwin and Hamilton, on the other hand, could quit at any time with 30 days' notice, but only at the cost of losing their bonus guarantees. The contracts were guaranteed by NEML.

At the board meeting at which the contracts were approved, the Board also discussed the pending petition for involuntary bankruptcy and agreed not to oppose the petition. GEO filed a statement of non-opposition to the petition the next day, December 21, 1989.

The bankruptcy court issued an order of relief on January 4, 1990. Hamilton and Baldwin were terminated by the trustee several months later. They filed claims against the estate for the salary and bonus guarantee account monies due them under the employment agreements. Under the reorganization plan later approved by the bankruptcy court, they were to receive no distributions from the estate. Baldwin and Hamilton agreed to subordinate their claims, but reserved the right to litigate the validity of the employment contracts so they might seek payment under the NEML guarantees.

Baldwin and Hamilton filed suit against NEML and others to enforce the agreements. The trustee counterclaimed, asking that the agreements be avoided under 11 U.S.C. § 549 or set aside as a breach of appellants' fiduciary duty. The bankruptcy court granted summary judgment for the trustee, holding the agreements should be treated as having been executed after the filing of the order for relief, and therefore as avoidable. The BAP affirmed on a different ground, holding the consideration given by Baldwin and Hamilton—their promise to remain at GEO for five years—was illusory because appellants knew that GEO could not so employ them. Baldwin and Hamilton appeal.

### II.

Section 549 permits the trustee to avoid certain postpetition transfers, including any transfer "that is authorized only under

section 303(f)." 11 U.S.C. § 549(a)(2)(A).[1] Hamilton and Baldwin first argue that their employment agreements are not avoidable under § 549(a)(2)(A) because they were authorized not under § 303(f), but under § 363(c)(1) as transactions made in the ordinary course of business. The employment contracts clearly were not made in the ordinary course of business, *see In re Dant & Russell, Inc.,* 853 F.2d 700, 704–05 (9th Cir. 1988); *In re Media Central, Inc.,* 115 B.R. 119, 125–26 (Bankr.E.D.Tenn.1990) (severance pay contracts entered into between management and debtor in possession were not in ordinary course of business because they were precipitated by bankruptcy proceedings), and were authorized only under § 303(f).

### III.

■ We cannot agree with the trustee that the bankruptcy court acted pursuant to its equitable powers under § 105 in "collapsing" the gap period between approval of the agreements and the filing of the order for relief and treating the agreements as unauthorized transfers made after the order of relief. While "[a]s a court of equity, [the bankruptcy court] may look through form to the substance of a transaction and devise new remedies," *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir.1986), the court cannot, in the name of its equitable powers, ignore specific statutory mandates. *See In re Lowenschuss,* 67 F.3d 1394, 1401–02 (9th Cir.1995). Under the statutory scheme, gap period transactions are avoidable only under sections 549(a)(2)(A) and 549(b); the court cannot avoid this restriction simply by ignoring the gap period. Under the statute, the gap period ends when the order of relief is entered, not sooner. *In re Andreotti,* 16 B.R. 28, 31 (E.D.Cal.1981).

### IV.

Hamilton and Baldwin argue that under § 549(b), which prohibits avoidance of transfers made during the gap period to the extent "any value" is given in exchange for the transfer, their agreements were valid at least to the extent of the value conferred on GEO.

■ Appellants contend their promise to stay with the company for five years, enforced by forfeiture of their bonuses if they left early, had value within the meaning of § 549(b). Both offer evidence of their accumulated expertise in GEO's complicated business enterprises, and Hamilton asserts he would have left GEO but for the employment contract. We conclude appellants' promises of future service had no "value" within the meaning of § 549(b). As the court said in *In re Sanchez–Casis,* 99 B.R. 115, 117 (Bankr. S.D.Fla.1989),

> "Value" under § 549(b) requires proof of services *performed* not services *promised,* during the involuntary gap period.... The obvious legislative purpose of § 549(b) is to give credit to a transferee to the extent that the bankrupt estate has received equivalent value for the transfer and, therefore, has not been depleted. That purpose is not served by the promise of possible future services to the debtor.

It may be desirable to replace former management during bankruptcy. A contractual commitment that management personnel may remain in their positions may burden rather than benefit the debtor. Moreover, if a promise to perform service in the future were deemed to have intrinsic value apart from the service itself, then any transfer in exchange for future service could be excepted from avoidance under § 549(b), and § 549(a) would be unenforceable for such contracts.[2]

1. Section 303(f) provides that "notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." The period between the filing of the involuntary petition and entry of the order for relief is known as the "gap period."

2. The BAP held the employment agreements were wholly invalid because appellants' consideration for the contracts—their promise to remain for five years—was illusory since they knew GEO could not perform its promise to employ them for that period. Summary judgment could not be granted on this ground because there is a disputed factual question as to the appellants' knowledge and intent regarding GEO's ability to employ them.

Appellants cite *In re Roanoke Iron & Bridge Works, Inc.,* 98 B.R. 256 (Bankr. W.D.Va.1988), for the proposition that a promise of future service can come within § 549(b)'s safe harbor provision. *Roanoke* is inapposite. In *Roanoke,* a company agreed during the gap period to complete work the debtor had contracted to perform. *Id.* at 257, 259. The debtor received a promise of future service not to itself, but to third parties—a promise which, at the moment of transfer, relieved the debtor of a contractual obligation having a readily ascertainable value.

■ Appellants contend that GEO received the full value of the contracts because GEO's profits from appellants' services during the gap period far exceeded the cost of their employment. Hamilton points to several million dollars in settlements and royalties obtained for GEO during the gap period which the company would not have recovered without his knowledge and expertise; Baldwin also asserts he was instrumental in obtaining millions of dollars for GEO from December 1989 forward. However, the value of appellants' services is not to be judged from the perspective of GEO but from the perspective of the appellants. *See Roanoke,* 98 B.R. at 259. The purpose of the § 549(b) avoidance exception is "to return the transferee to the economic position he was in before the transfer." *In re Burke,* 60 B.R. 665, 670 (Bankr.D.Conn.1986); *see also* King et al., 4 *Collier on Bankruptcy* ¶ 549.03[2] (15th Ed.1995). Valuing the services of Hamilton and Baldwin as equal to the amount they recovered for GEO, rather than at the reasonable cost of their services, would not serve the purposes of the statute; the funds appellants helped the company recover were not the amount necessary to return appellants to their economic positions before the agreements were signed.

■ To the extent Hamilton and Baldwin earned salaries under the employment agreement during the gap period, however, the agreement is not avoidable. The trustee has not argued that GEO received no value from appellants' services during this period. Hamilton and Baldwin believed they were working under the agreement during the gap period. The salaries found in the agreements did not depart dramatically from the salaries appellants earned under their at-will contracts. In these circumstances, the newly agreed salaries may be taken as a reasonable measure of the value to appellants of their services to GEO.

## V.

■ The trustee argues that any portion of the employment agreements that cannot be avoided under the bankruptcy code should nevertheless be set aside because the agreements constituted a breach of the appellants' fiduciary duty to GEO. *See Jones v. H.F. Ahmanson & Co.,* 1 Cal.3d 93, 108–109, 81 Cal.Rptr. 592, 460 P.2d 464 (1969)(agreements in breach of fiduciary duty can be set aside). However, Hamilton and Baldwin offered some evidence the agreements were adopted in an arm's-length process and appellants believed them to be in the best interests of the company and to represent a reasonable exercise of business judgment.[3] This evidence raised a slim but triable issue of fact as to whether appellants acted in good faith. *See Mueller v. MacBan,* 62 Cal. App.3d 258, 276, 132 Cal.Rptr. 222 (1976). Summary judgment is not proper, therefore, on the trustee's breach of fiduciary duty claim.

■ Appellants argued below that they are entitled to depose Barton Beek, GEO's outside counsel who advised the company about the propriety of the employment agreements. The court sustained GEO's objection based on the attorney-client privilege. Appellants contend GEO waived its attorney-client privilege by placing evidence about the appellants' good faith—including legal advice they received from Beek—in issue by assert-

---

**3.** For example, in November, 1989, a committee of Board members was formed to review the employment agreements and a committee member contacted several compensation experts from national accounting and executive search firms for assistance in analyzing the agreements.

Hamilton and Baldwin assert they believed the agreements were in the best interests of the company. The agreements assured GEO knowledgeable leadership throughout the difficult challenges facing the company during the bankruptcy.

ing a breach of fiduciary duty counterclaim. The privilege is waived, however, only when the client tenders an issue touching directly upon the substance or content of an attorney-client communication—not when the testimony sought would be only "one of several forms of indirect evidence" about an issue. *Rockwell International Corp. v. Superior Court,* 26 Cal.App.4th 1255, 1268, 32 Cal. Rptr.2d 153, (1994), *quoting Mitchell v. Superior Court,* 37 Cal.3d 591, 208 Cal.Rptr. 886, 691 P.2d 642, 650 (1984).[4] Since Beek's advice, rendered before the involuntary petition was filed, would be only one form of indirect evidence regarding appellants' good faith, GEO did not waive the privilege by filing the breach of fiduciary duty claim.[5]

## VI.

The grant of summary judgment is reversed. The employment agreements are not avoidable to the extent that Hamilton and Baldwin conferred value on GEO as measured by their salaries during the gap period, and appellants have raised a triable issue of fact as to whether they acted in good faith.

REVERSED AND REMANDED.

---

**4.** "[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." Fed. R.Evid. 501.

**5.** Nor was GEO's privilege waived by appellants' presence when Beek advised GEO when this occurred. Appellants were acting as officers of GEO.